# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 97-30001

VERA ANN NICHOLS,

Plaintiff-Appellee-
Cross-Appellant,

versus

LEWIS GROCER, a division of Supervalu, Inc.,
et al.,

Defendants,

LEWIS GROCER, a division of Supervalu, Inc.,

Defendant-Appellant-
Cross-Appellee.

Appeals from the United States District Court
for the Eastern District of Louisiana

April 3, 1998

Before WISDOM, HIGGINBOTHAM, and STEWART, Circuit Judges.

STEWART, Circuit Judge:

Vera Ann Nichols sued her employer Lewis Grocer, a division of Supervalu, Inc. ("Supervalu"), as well as three of Supervalu's management-level employees, asserting a myriad of gender-based employment discrimination claims under federal and state law. While three of her claims proceeded to trial, only one—a discriminatory failure to promote claim under La. Rev. Stat. Ann. § 23:1006—culminated in a jury verdict and judgment in Nichols' favor.

Supervalu now challenges the district court's ensuing denial of its motion for judgment as a matter of law. In addition, Nichols challenges the district court's denial of her motion to amend the judgment to allow instatement or front pay. Finding the evidence insufficient to prove either that Supervalu's non-discriminatory explanation was pretextual, or that gender was a motivating factor

in Supervalu's promotion decision, we reverse and render judgment in favor of Supervalu.[1]

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

In February 1987, Vera Ann Nichols ("Nichols") began working at Supervalu's Hammond, Louisiana grocery warehouse as an order selector assigned to the dry-goods repack area. Over the years, she was transferred to various other positions—including checker, clerk, and dock/return-door worker—each of which was in the dry-goods section of the warehouse. Nichols concedes that she never was employed in the perishables warehouse, a separate freezer warehouse where the frozen products and perishable items are stored.

In February of 1995, a night-time supervisor position opened up in the perishables warehouse. The memorandum posting the vacancy announced an opening for a first-line "warehouse supervisor" in shipping, and set forth the qualifications that were sought:

> 2+ years warehouse experience[;] 2+ years supervisory experience[;] knowledge, understanding, and sensitivity to a contractual environment[;] and good time management skills.

Four employees applied for the position: Frank Sirchia, Gary Durbin, David Williams, and Nichols. All four were interviewed by John Jordan ("Jordan"), the warehouse manager,[2] and each took an objective supervisor examination administered by the warehouse personnel department and scored at Supervalu's corporate office in Minnesota.[3]

The examination was administered on the following dates: February 28, 1995 (Sirchia and Williams); March 13, 1995 (Nichols); and March 14, 1995 (Durbin). Sirchia scored a 94, Durbin an 83, Nichols a 79, and Williams a 76. Since the examination was introduced into the hiring process in 1988, Supervalu has routinely tested applicants for supervisory positions and has promoted only

---

[1]Nichols' dual challenges to the district court's ruling are thus mooted.

[2]Nichols claims that Jordan initially refused to interview her, and that she secured an interview only after she complained to Tim Johns ("Johns"), the Director of Warehouse and Transportation and Jordan's supervisor.

[3]The warehouse personnel department is headed by Jordan's wife, Inez Jordan.

the highest scorer. Indeed, in the four previous times the examination has been used at the Hammond warehouse, the applicant with the highest score has been promoted to supervisor each time. The examination has not previously been used, however, with respect to the supervisory position at issue in this case.

Jordan selected Sirchia, the highest scorer on the supervisor examination, for the promotion to Night Perishables Warehouse Supervisor. On September 25, 1995, Nichols brought suit in the district court, alleging discriminatory failure to promote on the basis of sex under La. Rev. Stat. Ann. § 23:1006.[4] Supervalu responded that it promoted Sirchia, and not Nichols, because he was better qualified for the position. Trial by jury commenced on September 30, 1996, and the jury returned a verdict in favor of Nichols on October 1, 1996.[5] The jury awarded Nichols damages on her promotion claim in the amount of $115,000 plus costs and attorney's fees. Judgment was entered by the court on October 4, 1996.

On October 9, 1996, Supervalu filed a motion for judgment as a matter of law, or alternatively for a new trial or remittitur.[6] On October 11, 1997, Nichols filed a motion to amend the judgment in the hopes of securing instatement or front pay. In a judgment entered of record on December 6, 1996, the court denied both motions. Both parties now appeal the denial of their post-trial motions.

## II.

---

[4]La. Rev. Stat. Ann. § 23:1006 provides, in pertinent part, that "[i]t shall be unlawful discrimination in employment for an employer to . . . intentionally discriminate against or in favor of an individual with respect to compensation, terms, conditions, or privileges of employment because of . . . sex . . . ."

[5]Along with her discriminatory failure to promote claim, Nichols—based on other facts—asserted the following additional claims which likewise proceeded to trial: (1) sex discrimination with respect to her compensation in violation of the Equal Pay Act, 29 U.S.C. § 206(d) and La. Rev. Stat. Ann. § 23:1006; and (2) sexual harassment in violation of La. Rev. Stat. Ann. § 23:1006. The jury rejected both of these claims, and Nichols has not appealed the judgment to this court.

In addition, prior to trial, the district court dismissed Nichols' claim for intentional infliction of emotional distress, as well as her separate liability claims against Jordan, Johns, and Butch Haydel, her immediate supervisor. Nichols does not appeal the dismissal orders.

[6]Supervalu timely moved for judgment as a matter of law at the close of Nichols' case-in-chief and at the close of all the evidence.

**MOTION FOR JUDGMENT AS A MATTER OF LAW**

*Standard of Review*

We review *de novo* the district court's ruling on a motion for judgment as a matter of law. Travis v. Bd. of Regents of Univ. of Texas, 122 F.3d 259, 263 (5th Cir. 1997), cert. denied, -- S.Ct. -- (1998). A motion for judgment as a matter of law is granted only if:

> the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict . . . . On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury.

Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc), overruled on other grounds, Gautreaux v. Scurlock Marine, Inc., 107 F.3d 331 (5th Cir. 1997) (en banc) . Moreover, "[e]ven if the evidence is more than a scintilla, 'Boeing assumes that some evidence may exist to support a position which is yet so overwhelmed by contrary proof as to yield a [judgment as a matter of law].'" Rhodes v. Guiberson Oil Tools, 75 F.3d 989, 993 (5th Cir. 1996) (en banc) (quoting Neely v. Delta Brick and Tile Co., Inc., 817 F.2d 1224, 1226 (5th Cir. 1987)). A jury verdict thus survives a motion for judgment as a matter of law only if there exists a conflict in substantial evidence. In this case, we must determine whether the record contains a conflict in substantial evidence on the question of whether Supervalu's failure to promote Nichols was due to her sex.

*The Merits*

**A.**

As mentioned, Nichols brought her sex discrimination claim—for failure to promote—under La. Rev. Stat. Ann. § 23:1006. Courts have continually turned to federal employment discrimination law, including Title VII and the well-developed jurisprudence arising thereunder, for interpretation of Louisiana's anti-discrimination statute. See Deloach v. Delchamps, Inc., 897 F.2d 815, 818 (5th Cir. 1990) (age discrimination claim); Plummer v. Marriott Corp., 654 So.2d 843, 848 (La. App. 4th Cir.), writ denied, 660 So.2d 460 (La. 1995) ("Because the Louisiana statute is similar in scope to

4

the federal anti-discrimination prohibition in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to the federal jurisprudence for guidance . . . .").

The burden-shifting framework through which a plaintiff develops evidence to prove discrimination is well-established. First, the plaintiff must establish by a preponderance of the evidence a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. Rhodes, 75 F.3d at 992-93. Once the defendant meets this burden of production, the plaintiff must demonstrate that the defendant's proffered explanation is not the actual reason for its decision, but is instead a pretext for discrimination. Id. at 993. An employer's reason cannot be shown to be a 'pretext for discrimination' unless the plaintiff introduces *some* evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false *and* that illegal discrimination was the actual reason. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993); Swanson v. General Services Admin., 110 F.3d 1180, 1185 (5th Cir. 1997), cert. denied, 118 S.Ct. 366, 139 L.Ed.2d 284 (1997).

According to the Supreme Court, the proffer of sufficient evidence of pretext may *permit* the trier of fact to infer intentional discrimination:

> The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a *suspicion of mendacity*) may, together with the elements of the prima facie case, suffice to show intentional discrimination.

Hicks, 509 U.S. at 511, 113 S.Ct. at 2749 (emphasis added). We have stated, however, that for a plaintiff to successfully bootstrap himself into a finding of intentional discrimination in this manner, the evidence offered to counter the employer's proffered reasons must be *substantial*. Id. at 994.

In this case, Supervalu articulates as its nondiscriminatory reason for denying Nichols the promotion to Night Perishables Warehouse Supervisor the superior qualifications of the actual selectee, Frank Sirchia. Nichols contends that Supervalu's articulated reason is false, and that a review of the entire record (including the factual allegations supporting her unsuccessful equal pay and sexual harassment claims) creates a suspicion of mendacity over Supervalu's contentions

5

sufficient to prove intentional discrimination. In this context, our task is quite focused: we must deny Supervalu's motion for judgment as a matter of law, and affirm the judgment of the district court, if the record as a whole (1) creates a fact issue as to whether Supervalu's stated reason was what actually motivated it to deny Nichols the promotion *and* (2) creates a reasonable inference that sex was a determinative factor in that decision. Rhodes, 75 F.3d at 994.

**B.**

As an initial matter, we must resolve whether the entire record—including those facts and issues underlying Nichols' unsuccessful equal pay and sexual harassment claims—is to be considered in determining whether Nichols was denied the promotion to Night Perishables Warehouse Supervisor because of her sex.[7] Citing Burns v. Texas City Refining Co., Inc., 890 F.2d 747, 751 (5th Cir. 1989), Nichols argues that we should consider the *entire* record—not just the evidence presented on the promotion issue—to determine whether Supervalu's contentions are accompanied by a suspicion of mendacity sufficient to prove discrimination. See also Rhodes, 75 F.3d at 994 ("The factfinder may rely on all the evidence in the record to draw [an] inference of discrimination.").

Nichols reads our holding in Burns out of context. In Burns, we held that, after an employment discrimination case has been tried on the merits, a reviewing court need not "examine the evidence put on to support the Burdine stages[, but] rather [must] look to the record as a whole" to determine if discrimination occurred. Burns, 890 F.2d at 751. Significantly, Burns involved only

---

[7]Nichols' equal pay claim arises from the following factual assertions. Nichols claims that, during her assignment on the warehouse docks, she received training in and had to regularly use a forklift, just like her male counterparts, Mike Ferrara and Melvin Golden. In January 1993, Nichols was diagnosed with breast cancer, and had to take leave from work. During her three-month absence, Golden and Ferrara were promoted to the position of forklift-operator and received pay raises of ten (10) cents per hour. They were told to keep "it" quiet. Upon Nichols' return to work, when she discovered the disparate pay between her and her male counterparts, she approached her supervisor, who denied her a similar ten (10) cent raise. The parties dispute whether Nichols' assigned duties upon her return required the use of a forklift. As mentioned, the jury found against Nichols on her claims of discrimination related to compensation under the Equal Pay Act and Louisiana law.

Nichols' sexual harassment claim stems from certain alleged comments made by Jordan concerning Nichols' use of a tanning salon. In addition, Nichols claims that Jordan constantly stared at her breasts. The jury found the evidence as a whole insufficient to establish sexual harassment.

a *single* claim of discrimination.[8] Our reminder in that case to review the entire record was in no way unusual because all of the evidence presented was relevant to the sole claim at issue.

Unlike Burns, the instant case involved *multiple* issues that were tried before a jury. Only one of those issues—the promotion matter—is now before us. While Burns no doubt counsels that we review *each* piece of evidence presented on the *promotion* issue to resolve this case, nowhere does it state that we must consider all the evidence presented on *separate*, unrelated claims—especially ones that were rejected by the jury. Burns does not vest such unrelated evidence with relevance.

Nichols also contends that her disparate pay and sexual harassment evidence is probative of Supervalu's hostile attitude toward women, and that we are compelled to consider such evidence in determining whether she was denied a promotion on the basis of her sex. See Polanco v. City of Austin, Tex., 78 F.3d 968, 980 (5th Cir. 1996) ("Evidence of the APD's hostile treatment of and attitude toward Hispanics is probative of whether Polanco was terminated because of his nationality."). Suffice it to say, the facts and circumstances in Polanco do not mirror those presented in this case. In light of the jury verdict rejecting Nichols' equal pay and sexual harassment claims, we decline to parlay Nichols' allegations in this regard into a factual finding that Supervalu's working environment was polluted by a hostile attitude towards women. The jury rejected her claims for a reason. Nichols was granted one bite at the apple, she lost, and she has not filed an appeal to this court on those issues. Under these circumstances, we limit our appellate review to the evidence of record presented on the promotion issue.

## C.

Supervalu's 'legitimate, nondiscriminatory reason' for denying Nichols the promotion to Night Perishables Warehouse Supervisor was that Sirchia was better qualified. In support of this reason, Supervalu claims that Sirchia stood out on several fronts: (1) he received the highest score on the objective supervisor test; (2) he had experience in the perishables department, as evidenced by the fact that he (a) had worked in this department for three years in numerous positions and (b)

---

[8]The plaintiff in Burns complained that he was discharged from his job on the basis of age.

had trained a number of employees who worked there; (3) he was responsible for the warehouse's biggest account (Delchamps); and (4) he had limited supervisory experience in his prior job with Walmart.

Nichols attempts to establish a suspicion of mendacity over Supervalu's proffered explanation by asserting that Supervalu "flip-flopped" in ranking the factors it used to evaluate the applicants' qualifications. According to Nichols, when Mr. Jordan was asked at his deposition to identify the most *important* of the relevant factors, he alternated between (a) leadership skills, (b) experience in the perishables department, (c) prior supervisory skills and (d) performance on the supervisor examination—before finally deciding that all four were important.[9] Nichols notes that at trial,

---

[9]The following excerpt is taken from Jordan's deposition:

| | |
|---|---|
| Question: | What were you looking for? What sort of individual were you looking for in that position? |
| Jordan: | Well, we're looking for somebody with leadership. That had the respect of the people in leadership. |
| Question: | Did Ann Nichols have the respect of the people? |
| Jordan: | I'm sure she did. |
| Question: | Did she have leadership? |
| Jordan: | Yes. |
| Question: | Any other factors that you considered? |
| Jordan: | How have they been doing their job before? Are they in the area? Have they worked in the area before? Then we take into consideration the test? |
| Question: | But the test is not uppermost, is it? |
| Jordan: | The test has a lot of bearing. |
| Question: | If you had to rank the factors from one to five, how would you rank them? Where would you place the test? |
| Jordan: | Probably number one. |
| Question: | That overrides experience? |
| Jordan: | No. |
| Question: | So experience would be number one and not the test? |
| Jordan: | No. The test is number one. You take all of them into consideration. You can't just take one. |
| Question: | You take a composite picture? |
| Jordan: | You take the total picture. |
| Question: | For instance, an individual who does well on the test, extremely well on the test, but has zero experience would not be the sort of person you are looking for, correct? |
| Jordan: | Correct. |
| Question: | And one who has tons of experience but bombs the test is not the sort of person you are looking for? |
| Jordan: | Correct. |
| Question: | So it's the composite picture you are looking for? |

however, Jordan unequivocally cited the test scores as the preeminent factor.[10] Nichols concludes that Supervalu's "shifting explanations" in this regard are evidence of pretext, and that this suffices to create an inference of illegal sex discrimination.

We are unpersuaded by Nichols' argument. While a reasonable juror certainly may infer discrimination when an employer offers inconsistent explanations for the challenged employment action, see EEOC v. Ethan Allen, Inc., 44 F.3d 116, 120 (2d Cir. 1994), Nichols cannot point to such a discrepancy in this case. Indeed, at every stage of the proceeding, Supervalu has maintained that Sirchia was selected for the promotion because he was *the most qualified candidate*. This assessment was made on the basis of several factors, including Sirchia's performance on the supervisor test. While Jordan may have had difficulty in identifying, in the abstract, which *factor* he considered most important to his decision, we do not detect in this difficulty any attempt to shield improprieties in the selection process. The promotion decision is a dynamic one, and the relative importance placed on various selection criteria cannot be expected to remain fixed and unyielding. We conclude that Nichols' "shifting explanations" argument falls short of proving Supervalu's proffered explanation was pretext.

At any rate, we note that Nichols has failed to show that she was *clearly better qualified* than Sirchia with respect to any of the listed selection criteria. See EEOC v. Louisiana Office of Community Services, 47 F.3d 1438, 1444 (5th Cir. 1995) ("A factfinder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."). In support of her claim that she indeed *was* better qualified for the promotion than Sirchia, Nichols offered the following: (1) she had greater seniority (*i.e.*, she had worked at Supervalu four years longer than Sirchia); (2) she had been employed in a greater number

---

        Jordan:      Correct.

[10]The following excerpt is taken from Jordan's trial testimony:

        Question:     Now, in evaluating whom to promote, what's the number one factor that you took into consideration?
        Jordan:       The test.

of areas in the warehouse; (3) she had received consistently favorable performance evaluations; and (4) she had successfully completed two correspondence supervisory courses.

Assuming arguendo that Nichols was indeed prepared to handle the rigors of the night perishables supervisor position, her listed "qualifications" nevertheless do not establish her to be 'clearly better qualified' for it. This court has repeatedly stated that "an 'attempt to equate years served with qualifications . . . is unpersuasive.'" Nichols v. Loral Vought Systems Corp., 81 F.3d 38, 42 (5th Cir. 1996) (quoting Bodenheimer v. PPG Indus., Inc, 5 F.3d 955, 959 (5th Cir. 1993)). In addition, we have reasoned that "it is irrational for an employer to give less weight to general supervisory experience than actual field experience where actual field experience is relevant to the position." Louisiana Office of Community Services, 47 F.3d at 1446. Here, Nichols concedes that she never has worked in the perishables department, which is where the disputed supervisory position was available. Given this concession, it seems perfectly reasonable for Jordan to have discounted her general, albeit extensive, warehouse experience when evaluating her candidacy.

Not content to rest on her own laurels, however, Nichols also mounts an attack on Sirchia's qualifications for the position. She first attempts to downplay the importance of his performance on the supervisor examination by arguing that the test was not reliable, and that it was highly doubtful that Sirchia made the highest score.[11] In addition, she alleges that both Supervalu and Sirchia lied about the extent of Sirchia's prior supervisory experience, particularly with respect to his employment at Walmart.[12]

---

[11]This argument is premised on Nichol's claims that (1) the supervisor examination was not monitored to prevent cheating; and (2) neither she, nor the trial court, has ever been shown the actual test papers.

[12]On this point, Nichols asserts that, initially, when prior supervisory experience was being stressed by those involved in the decision-making process, broad references were made to Sirchia's general supervisory experience at Walmart; however, when the "truth" was discovered (*i.e.,* Sirchia had only been a sales clerk), the conspiring parties backtracked, claiming that Sirchia had only *limited* supervisory experience (*i.e.,* he supervised 2 - 4 people whenever his supervisor was absent) and that such experience was only a minor factor amid all the criteria that were being considered. Nichols' "smoking gun" is that Sirchia never indicated such experience on his application for employment to Supervalu; if he had such experience, Nichols concludes, he certainly would have disclosed it.

Nichols' attempts to question Sirchia's qualifications in this regard are unpersuasive. While the record would undeniably be more complete if it contained the candidates' actual test papers, the mere fact that the papers are absent does not necessarily undermine the probative value of Supervalu's proof concerning Sirchia's superior test performance.[13] Although our review of the record supports Nichols' view that Supervalu overstated the extent of Sirchia's prior supervisory experience at Walmart, this point in and of itself in no way proves pretext for illegal sex discrimination.

In the end, Nichols simply has not succeeded in proving that she was clearly better qualified than Sirchia for the night perishables supervisor position. The record reveals that Sirchia worked in the perishables warehouse for a number of years prior to the promotion, he trained several of the perishables warehouse employees, and he serviced the warehouse's largest account, Delchamps. Nichols' rather unpersuasive response to these facts is that Sirchia's perishables warehouse experience should be discounted because the notification announcing the position advertised only "an opening in the warehouse for a first line supervisor in shipping," and made no mention of the perishables department.

This argument, however, calls for us to ignore the specific fact situation facing Supervalu when it proceeded with the hiring process. It is indisputable that: (1) the position of Night Perishables Warehouse Supervisor became available in early 1995 (2) four employees (*i.e.,* Sirchia, Williams, Nichols, and Durbin) applied for it; (3) and each applicant's candidacy was considered. Nichols does not present any evidence to suggest that another supervisory position was available at the time, or that she, or any of the other applicants, believed they were applying for a position other than the Night Perishables Warehouse Supervisor one. Nor does Nichols cite any authority for the proposition that an applicant's actual (and relevant) field experience must be ignored if the

---

[13]Nichols' complaints concerning the production of the test papers appears to be a red herring, as it is unclear from the record to what extent (if any) her counsel pressed Supervalu to produce the actual test papers for trial. Indeed, she has not assigned as error on appeal any adverse ruling of the trial court on this issue.

announcing memorandum fails to mention the particular department containing the vacancy. In the circumstances of this case, we find Sirchia's actual field experience in the perishables department to be a definite advantage to his candidacy for the promotion.[14] We therefore conclude that Supervalu's proffered non-discriminatory explanation for Nichol's nonselection—namely, that Sirchia was better qualified—was not a pretext for discrimination.

## D.

In the alternative, Nichols argues that sufficient evidence exists in the record to prove that she was denied an equal opportunity to apply and compete for the promotion because of her sex, and therefore, the jury properly found that sex played a determinative factor in Supervalu's decision not to promote her. In support of this claim, Nichols highlights that: (1) Sirchia was approached and encouraged to apply for the promotion while she was not; (2) she had to go over Jordan's head to request an interview, and Jordan complied only after some delay; (3) Johns, one of the persons involved in the decision-making process, could not remember discussing her strengths and weaknesses; and (4) she had to wait two weeks to take the supervisory test after Sirchia.

We find that Nichols' claim of disparate treatment on the basis of sex is not supported by the record evidence. First, given Sirchia's extensive experience in the perishables department and his prior training of several of the department's employees, we see no discriminatory animus in Supervalu's efforts to encourage Sirchia (and not Nichols) to apply for the Night Perishables Warehouse Position. Any notion that Supervalu's action in this regard was gender-driven is nullified by the fact that Williams and Durbin, two similarly-situated male applicants, were likewise not

---

[14]We find particularly significant the fact that Sirchia had trained many of the perishables warehouse employees prior to his promotion. Nichols attempts to discount this fact by arguing that there is no proof that Sirchia was ever a supervisor prior to his promotion, and concludes that it is highly doubtful that Sirchia provided the claimed training.

Nichols' argument falls short for several reasons. First, implicit in her argument is the unreasonable view that only supervisors can train employees. Second, Nichols' has presented no credible *evidence* to offset Supervalu's contention that Sirchia trained several perishables warehouse employees. Finally, given that Sirchia was responsible for the warehouse's largest account, we find it quite reasonable to believe that he trained perishables warehouse employees prior to his promotion, despite his non-supervisor status at the time.

approached and encouraged to apply for the vacancy.

Second, although there apparently was some delay in setting up Nichols' interview, our review of the record does not reveal the requisite "evidence of conscious or intentional delay" occasioned by "[gender-based] animus" that is necessary to give rise to an inference of discrimination. Odom v. Frank, 3 F.3d 839, 845 (5th Cir. 1993) (mere delay in interviewing candidate, caused by employer's "inexplicabl[e]" failure to timely deliver candidate's application to reviewing panel, did not result in finding of discrimination because "nothing in the record . . . reflect[ed] any evidence of conscious or intentional delay, much less racial or age animus."). Here, the only evidence linking Jordan's delay in interviewing Nichols to gender-based bias was Nichols' self-serving testimony. We have previously held, however, that "a[] [sex] discrimination plaintiff's own good faith belief that [her] sex motivated [her] employer's action is of little value." Little v. Republic Refining Co., Ltd., 924 F.2d 93, 96 (5th Cir. 1991). "[A] subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." Id.; see also Armendariz v. Pinkerton Tobacco Co., 58 F.3d 144, 152 (5th Cir. 1995), cert. denied, 116 S.Ct. 709, 133 L.Ed.2d 664 (1996) ("We have traditionally been very cautious about self-serving and conclusory testimony based on a subjective belief that . . . discrimination occurred.").

Finally, no inference of sex-based discrimination is created from Johns' apparent lack of memory concerning the discussion of Nichols' candidacy, or from the existence of a two-week gap between the testing of Sirchia and the testing of Nichols. Any minimal weight such evidence carries is undermined by the fact that Nichols cannot point to any gender-based disparate treatment in these isolated events. First, no evidence exists to suggest that Johns' lapse of memory was confined to Nichols' candidacy; indeed, it is highly probably that, if asked, Johns would have been equally incapable of recalling the strengths and weaknesses of the two rejected male applicants, Williams and Durbin. Second, we see that applicant Durbin took the supervisor test one day after Nichols did. Consideration of a male applicant's candidacy was therefore delayed even longer than Nichols'.

In sum, other than her own subjective belief, Nichols offered very little evidence in support

13

of her claim that gender discrimination influenced Supervalu's promotion decision. When such is the case, the evidence as a whole is insufficient to create a jury question. See Armendariz, 58 F.3d at 153.

## III.

### CONCLUSION

Based on the foregoing reasons, the district court's denial of Supervalu's judgment as a matter of law is REVERSED and judgment is RENDERED in Supervalu's favor. Because judgment on the liability issue is decided in favor of Supervalu, we need not consider Supervalu's request for remittitur and Nichols' appeal for instatement or front pay.

REVERSED AND RENDERED.