**Billy H. FULLER, Plaintiff,**

**v.**

**GENERAL CABLE INDUSTRIES, INC., Defendant.**

**No. 3:98–CV–077.**

United States District Court, E.D. Texas, Paris Division.

Feb. 4, 2000.

---

David Zedler, Attorney at Law, Pottsboro, James A. Jones, Jones & Associates, Dallas, TX, for Billy H. Fuller, plaintiffs.

Allen Butler, Robert James Wood, Jr., Clark West Keller Butler & Ellis, Dallas, Jeffrey E Myers, Christine Vigliotti, Blank Rome Comiskey & McCauley, Philadelphia, PA, for General Cable Industries Inc., defendants.

## MEMORANDUM OPINION DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SCHELL, Chief Judge.

This matter is before the court on the motion for summary judgment (Dkt.# 20), filed on August 20, 1999, by Defendant General Cable Industries, Inc. ("General Cable"). Plaintiff Billy H. Fuller ("Fuller") obtained an extension of time to file a response in opposition to General Cable's motion and filed his response on Septem-

ber 13, 1999. General Cable filed a reply to Fuller's response on September 20, 1999. In its motion for summary judgment, General Cable argues that Plaintiff has failed to establish a prima facie case of race discrimination and has done nothing to negate General Cable's legitimate non-discriminatory reason for not promoting him. Having carefully considered the parties submissions in light of the circumstances of this case and the applicable law, the court finds that Defendant's motion for summary judgment should be DENIED.

## DISCUSSION

This is an employment discrimination case in which Fuller asserts that General Cable failed to promote him to a supervisory position because of his race (African–American) in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981, the Civil Rights Act of 1991, 42 U.S.C. § 1981a, and the Texas Commission on Human Rights Act, Tex. Labor Code Ann. §§ 21.001 *et seq.*[1] A plaintiff can bring a Title VII claim under either a disparate treatment theory or a disparate impact theory. Under the former theory, the plaintiff seeks to establish that the defendant intentionally discriminated against him in the terms and conditions of employment on account of race.[2] Under the latter theory, a plaintiff attempts to show that a facially neutral employment practice "creates such statistical disparities disadvantaging members of a protected group that they are 'functionally equivalent to intentional discrimination.' "[3] Fuller asserts that he can proceed in this case under both theories based on Defendant's failure to promote him due to his race and because of the lack of African–Americans in Defendant's manage-

---

1. The parties agree that race discrimination claims filed under the Texas Human Rights Act and the Civil Rights Acts of 1866 and 1991 are analyzed under the same evidentiary framework that is applied to Title VII claims. *See Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 n. 2 (5th Cir.1999); *Murphy v. Uncle Ben's, Inc.,* 168 F.3d 734, 738 (5th Cir.1999). Therefore, the court will employ

only one analysis in evaluating each of Plaintiff's claims.

2. *See Munoz v. Orr,* 200 F.3d 291, 298 (5th Cir.2000).

3. *Id.* at 299–300 (quoting *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 987, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)).

ment ranks due to inappropriate promotion criteria. General Cable argues that the disparate impact model is not applicable here because Fuller has presented no evidence establishing a causal connection between any of its specific employment practices and the alleged class-based imbalance in its supervisory work force. The court agrees with Defendant.

■■■ To establish a prima facie case of disparate impact discrimination, a plaintiff "must identify specific practices as being responsible for any observed disparities ... and must conduct a systemic analysis of those employment practices...."[4] In doing so, a plaintiff must provide sufficient evidence to raise an inference of causation.[5] Here, other than making the conclusory statement that Defendant's promotion criteria have led to a race-based imbalance in the number of persons who receive promotions at General Cable, Fuller has presented no statistical or other evidence showing the actual impact of those criteria on the work force at General Cable. Moreover, his argument that those criteria are a mere pretext for discrimination and are not being consistently used by General Cable's management is incompatible with the argument that use of those criteria has led to a disparate impact on African–American employees. Because Plaintiff has failed to make a prima facie showing of disparate impact discrimination, the court will analyze his claims under the disparate treatment theory only.[6]

As noted, this case is before the court on Defendant's motion for summary judgment. Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The initial burden is on the moving party to point out the absence of any genuine issue of material fact.[7] Once the initial burden is satisfied, the burden shifts to the nonmovant to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.[8] A material fact issue exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[9] Under this analysis, all evidence and the inferences to be drawn therefrom must be viewed in the light most favorable to the nonmovant.[10]

When applying Rule 56(c) in the context of an employment discrimination case, the focus is on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff.[11] Where, as here, a plaintiff bases his claims on circumstantial evidence rather than direct proof of discrimination, the case becomes subject to the three-step burden-shifting framework laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Dep't of Community Affairs v. Bur-*

---

4. *Id.* (internal citations omitted).

5. *See Garcia v. Woman's Hosp. Of Texas*, 97 F.3d 810, 813 (5th Cir.1996).

6. The court also agrees with Defendant that Plaintiff's disparate impact claim can be rejected because he failed to raise it with the EEOC. *See Smith v. Centra Benefit Service*, No. 98–60165, 1999 WL 197159 (5th Cir. March 25, 1999) (unpublished).

7. *See International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264 (5th Cir.1991) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

8. *See id.*

9. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

10. *See Colson v. Grohman*, 174 F.3d 498, 506 (5th Cir.1999).

11. *See Grimes v. Texas Dept. of Mental Health and Mental Retardation*, 102 F.3d 137, 139 (5th Cir.1996) (citations omitted).

*dine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). Within that framework, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence.[12] A plaintiff need not prove his prima facie case at the summary judgment stage, but is only required to "provide evidence that raises a genuine issue of material fact concerning each element of [his] prima facie case."[13]

If the plaintiff succeeds in establishing a prima facie case, a presumption of discrimination arises and the burden of production shifts to the employer to articulate a legitimate non-discriminatory reason for the challenged employment action.[14] If the employer is able to articulate such a reason, the presumption of discrimination disappears and the burden shifts back to the plaintiff to prove that the defendant's proffered reason is false and was given as a pretext for discrimination.[15] "Once a Title VII case reaches the pretext stage, the only question on summary judgment is whether there is a conflict in substantial evidence to create a jury question regarding discrimination."[16] It is against the backdrop of these standards that the court now considers whether Fuller's failure to promote claim survives the pending motion for summary judgment.

**A. Plaintiff's Prima Facie Case**

 General Cable argues that summary judgment is warranted in this case because Fuller has not carried his burden of establishing a prima facie case of race discrimination. Specifically, General Cable contends that Fuller did not apply for any specific and available supervisory position and that he also lacked the qualifications to be promoted. A prima facie case is established in the failure to promote context by showing (1) that the plaintiff is a member of a protected class, (2) that the plaintiff sought and was qualified for an available employment position, (3) that the plaintiff was rejected for that position, and (4) that the employer promoted or continued to seek other individuals not in the protected class.[17] Having carefully considered the summary judgment record, the court finds that Fuller has carried his burden of establishing a prima facie case of race discrimination.

Fuller's complaint alleges that General Cable has continually passed him over for promotion in favor of less experienced and less qualified white employees despite the fact that he has performed his job duties in an exemplary manner for nearly thirty years and has repeatedly let it be known to management that he wanted to be promoted to a supervisory position.[18] Though his complaint does not give specific details, Fuller's lawsuit seems to focus primarily on the promotion of three of his white co-workers in the Tandem Department between late 1995 and 1996. Defendant does not contest that Fuller is a member of a protected class, that he has never been promoted, or that white males were promoted to each of the three supervisory positions Fuller emphasizes. The only

---

12. See *Shackelford v. Deloitte & Touche, LLP,* 190 F.3d 398, 404 (5th Cir.1999) (citation omitted).

13. *Waltman v. International Paper Company,* 875 F.2d 468, 477 (5th Cir.1989).

14. See *Shackelford,* 190 F.3d at 404.

15. See *id.*

16. *Id.* (citing *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996)).

17. See *Rutherford v. Harris County,* 197 F.3d 173, 179 (5th Cir.1999) (addressing failure to promote based on sex discrimination); *Ben-* *nett v. Total Minatome Corp.,* 138 F.3d 1053, 1060 (5th Cir.1998) (discussing failure to promote based on age discrimination); *Gonzalez v. Carlin,* 907 F.2d 573, 578 (5th Cir.1990) (discussing failure to promote based on national origin discrimination); *Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425, 1428 (5th Cir.1984) (same); *Page v. U.S. Indus., Inc.,* 726 F.2d 1038, 1055 (5th Cir.1984) (discussing failure to promote based on race discrimination).

18. See Pl.'s First Amended Complaint at 2.

question remaining at this stage of the analysis, therefore, is whether the second element of the prima facie case—that Plaintiff sought and was qualified for an available position—has been satisfied. The court believes that it has.

 Beginning with the issue of whether Fuller actually applied for an available position, the court first observes that no formal application is required for an employee to be considered for promotion at General Cable. The affidavit of Brenda Atnip, General Cable's Human Resources Manager, explains that employees interested in being promoted apply for supervisory positions by simply "expressing their interest in the job, either verbally or in writing" to their immediate supervisors, the Human Resources Manager, or to the Plant Manager.[19] The summary judgment record contains evidence tending to prove that Fuller followed that very procedure by verbally expressing his interest in being promoted both to Brenda Atnip and to his immediate supervisor, Jeff Gallagher.[20]

Defendant argues that general expressions of interest in being promoted such as those that Fuller claims to have made to Atnip and Gallagher are insufficient to establish that he applied for a position as a supervisor. According to Defendant, to avoid summary judgment Fuller must identify the specific supervisory position(s) that he applied for and was denied. The court disagrees. Where an employer does not post available supervisory vacancies and uses no formal procedure for selecting candidates for promotion, a plaintiff need only show "that the company had some reason or duty to consider [him] for the post."[21] Here, the record shows that managerial vacancies at General Cable are not posted or otherwise announced to employees,[22] that "[t]here are no written rules, policies or procedures relating to promotions,"[23] and that supervisory positions are sometimes not announced until after they have been filled.[24] To require Fuller to show that he applied for a specific supervisory position under such circumstances would be patently unfair. As the Fifth Circuit noted under analogous circumstances: "It is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion."[25] Given the highly informal and nebulous nature of General Cable's promotion process and the evidence that Fuller has repeatedly told members of management of his interest in being promoted, a jury could reasonably conclude that Defendant had a reason or duty to consider Plaintiff for a supervisory position when one became available.

19. *See* Affidavit of Brenda Atnip (hereinafter "Atnip Aff.") at ¶ 8, attached to "Appendix in Support of General Cable's Motion for Summary Judgment" (hereinafter "Dft.'s Appendix") at Tab 13.

20. *See, e.g.,* Affidavit of Billy Fuller (hereinafter "Fuller Aff.") at ¶ 11, attached to "Plaintiff's Response to Defendant's Motion for Summary Judgment" (hereinafter "Pl.'s Resp.") at Tab 1 (describing encounter with Brenda Atnip in summer of 1995 when Fuller and Anthony L. Jones, another African-American employee, went to Atnip's office and expressed their interest in becoming supervisors); Affidavit of Anthony L. Jones (hereinafter "Jones Aff.") at ¶ 7, Pl.'s Resp. Tab 2 (same); Deposition of Billy Fuller attached to Dft.'s Appendix as Tab 17 (hereinafter "Fuller Depo.") at 48–49, 53, 59–60, 67, & 124 (describing same meeting with Atnip); Fuller Aff. at ¶ 10 (noting that Fuller inquired of Gallagher about how he could obtain a promotion on several occasions); Fuller Depo. at 49, 53, 61–62, & 124 (describing occasions when Fuller told Gallagher of his interest in being promoted).

21. *Jones v. Flagship Intern.,* 793 F.2d 714, 724 (5th Cir.1986) (citing *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126, 1133 (11th Cir.1984)).

22. *See* Atnip Aff. at ¶ 8.

23. *See* Correspondence from General Cable to the EEOC, Dft.'s Appendix Tab 4.

24. *See* Fuller Aff. at ¶ 18; Fuller Depo. at 76.

25. *Bernard v. Gulf Oil Corp.,* 841 F.2d 547, 570 (5th Cir.1988) (citing *Carmichael,* 738 F.2d at 1133).

Even were that not the case, however, there is some evidence in the summary judgment record that supports the view that Fuller did, in fact, specifically apply for a position as shift supervisor in the Tandem Department. For example, when responding to the question of whether he ever pointed to a specific position when talking to Jeff Gallagher about being promoted, Fuller testified: "I talked to Jeff. Like I say, I said, I'm qualified right here. I said, I can be a supervisor here in Tandem." [26] Additionally, other evidence in the record suggests that it was not the custom or practice of employees at General Cable to specify a particular position when applying for promotion. For instance, when again asked during his deposition whether he ever applied for a specific managerial job, Fuller explained: "You don't apply for no specific job [at General Cable]." [27] He expounded on that statement by explaining that white employees who have not requested promotion to any particular position have been sought out by management and offered supervisory positions. [28] The court thus finds that Fuller has satisfied the "application" element of his prima facie case.

■ The court similarly concludes that Fuller has carried his burden of showing that he was qualified for the promotion(s) he sought at General Cable. Support for this conclusion is found in the uncontroverted evidence showing that during Fuller's nearly thirty-year tenure at General Cable he has gained a considerable "breadth of knowledge of all aspects of the plant's operations." [29] In addition to his 10–12 years of experience in the Tandem Department alone, Fuller has also worked in many other areas of the Bonham facility, including the Repair Department, the Cabling Department, the Stranding Department, the Extrusion Department, the Jacketing Department, the Pairing Department, the Maintenance Department, the Assembly Department, and the Wire Drawing Department. [30] The record also contains evidence that Fuller "strived to perform in an exemplary manner" and "was doing a good job." [31] Finally, Fuller has submitted uncontradicted evidence showing that prior to 1996 he had received no negative reviews of his performance for a period of sixteen years. [32]

General Cable asserts that Fuller was not qualified for a supervisory position because he lacked a college degree and had no prior supervisory experience. It also suggests that he was ineligible for promotion in 1996 because he had received three disciplinary warnings during that time. For reasons that will be discussed below, the court finds that there is a genuine issue of material fact about whether Defendant's stated reasons are worthy of credence or are a mere pretext for discrimination. Suffice it to say at this juncture that the court finds there to be enough evidence in the record to support the inference that Fuller was qualified for promotion.

## B. Defendant's Legitimate Non–Discriminatory Reason

■ Because Plaintiff has carried his burden of establishing a prima facie case, a presumption of discrimination arises and the burden of production shifts to General Cable to articulate a legitimate non-discriminatory reason for not promoting Fuller. [33] Defendant's burden, however, is not an onerous one. [34] General Cable need not

---

26. Fuller Depo. at 62.

27. *Id.* at 54.

28. *See id.* at 54–59; Fuller Aff. at ¶ 17.

29. Fuller Aff. at ¶ 10.

30. *See id.* at ¶ 5.

31. *See id.* at ¶ 6; Fuller Depo. at 62.

32. *See id.* at ¶ 6.

33. *See Shackelford,* 190 F.3d at 404.

34. *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

prove that it was actually motivated by the reasons articulated, but must only raise a genuine issue of fact as to whether it discriminated against Fuller.[35] As already noted, General Cable claims that Fuller was not promoted because he lacks a college degree and prior supervisory experience and because he received three disciplinary warnings for poor workmanship in 1996. The court finds that, if believed, this explanation for Defendant's conduct would support the finding that Defendant's decision was not based on unlawful considerations.[36] Thus, General Cable has articulated a legitimate non-discriminatory reason for its challenged employment action and the presumption of discrimination disappears.[37]

The burden now shifts back to Fuller to present evidence establishing not only that the proffered reasons for his non-promotion were false, but also that they operated as a pretext for discriminatory animus.[38] Because this case reached the pretext stage, the only question on summary judgment is whether the evidence of racial discrimination, in its totality, supports an inference of discrimination.[39] In other words, Fuller can escape summary judgment by showing that "the evidence taken as a whole (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer and (2) creates a reasonable inference that [race] was a determinative factor in the actions of which plaintiff complains."[40] After a careful review of the summary judgment record, including the various affidavits, deposition transcripts, and exhibits, the court finds that Fuller has presented ample evidence to create a jury question about whether General Cable's stated reasons for not promoting him are pretextual.

To begin with, Fuller has pointed to evidence in the record showing that many white employees who have no college education or supervisory experience have been promoted to supervisory positions at General Cable.[41] Defendant does not deny that about ¼ of its current core of white supervisors lack both of those qualifications.[42] Although General Cable asserts that each of those white supervisors received his promotion before the company began requiring a college education and/or supervisory experience, it submits no evidence establishing when the alleged policy was, in fact, instituted.[43] Defendant does note that those employees each have 15–38 years of experience, suggesting that it could not have instituted its policy until sometime around the mid 1980s.[44] This possibility is squarely contradicted, however, by evidence in the record indicating that as early as 1970 Fuller was told that he could not be promoted without a college education.[45] Defendant also fails to acknowledge the import of the fact that Fuller himself has nearly 30 years of experi-

---

**35.** *See id.* at 254–55, 101 S.Ct. 1089.

**36.** *See Scales v. Slater,* 181 F.3d 703, 712 (5th Cir.1999) (noting that "basing a promotion decision on an assessment of qualifications will almost always qualify as a legitimate, nondiscriminatory reason").

**37.** *See Shackelford,* 190 F.3d at 404.

**38.** *See id.*

**39.** *See Shackelford,* 190 F.3d at 404 (citing *Rhodes,* 75 F.3d at 993).

**40.** *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179, 181 (5th Cir.1996) (citing *Rhodes,* 75 F.3d at 995).

**41.** *See, e.g.,* Fuller Aff. at ¶ 10; Fuller Depo. at 42 & 44–45; Atnip Aff. at Ex. B; Deposition of Brenda Atnip (hereinafter "Atnip Depo.") at 25–33, Dft.'s Appendix Tab 14.

**42.** *See* Atnip Aff. at Ex. B (identifying 8 of the 30 current supervisors who have no college education and no supervisory experience). *See also* Atnip Depo. at 25–33 (identifying numerous managerial employees who lack a college education or full degree).

**43.** *See* Atnip Aff., Ex. B at 2.

**44.** *See id.*

**45.** *See* Fuller Depo. at 45–47 & 83–84.

ence at General Cable and has purportedly expressed his interest in promotion for many years. Evidence that an employer subjects nonwhite employees to promotional qualifications that white employees are not required to meet obviously supports an inference of pretext.[46]

To further support his pretext argument, Fuller has submitted the affidavit of Finis C. Burks, an African–American employee at General Cable who applied for and was denied a promotion to management. Burks attests that when he interviewed with Brenda Atnip in 1996 for a supervisory position in the Jacketing Department, he was told that he "did not have enough college for the position" despite the fact that he then possessed an associate degree plus some additional college credits.[47] Burks' treatment is to be contrasted with the experience of Ron Morrison, the one employee identified by General Cable as having recently been promoted despite his lack of any prior college education or supervisory experience. According to Atnip's affidavit, Morrison was able to be promoted to the position of shift supervisor in the Tandem Department "because of his exemplary performance and ability to work with his peers and his commitment to attend college."[48]

Fuller posits that the promotion of Morrison, who is African–American, reflects an attempt by General Cable to create the appearance of racial equality at the Bonham facility given that the timing of the promotion closely coincided with his filing of an EEOC charge. He supports this position with several affidavits showing that before his EEOC charge was filed, no African–Americans had been promoted at General Cable in 20 years.[49] Fuller also submits uncontroverted affidavit and deposition testimony showing that Jeff Gallagher approached him after he filed his EEOC charge and offered to promote him to a supervisory position immediately.[50] Such evidence, if taken as true, significantly bolsters the claim that General Cable's stated reasons for not promoting Fuller were indeed pretextual.

Fuller argues that the promotion of Ron Morrison also provides further evidence of pretext in this case because it highlights how General Cable has continually modified its position regarding how much education it requires of first-time supervisors. For example, Fuller notes that General Cable initially told the EEOC that "a bachelor's degree or comparable experience" was required,[51] then the requirement was lowered to only "a college degree or some college education," [52] and now there is evidence that a candidate will be considered based on a mere "commitment to attend college." [53] Additionally, Fuller submits, as evidence of pretext, the fact that in all his discussions with Gallagher and Atnip about being promoted, and in General Cable's correspondence with the EEOC regarding this case, no mention was apparently made of prior supervisory experience being a qualification for promotion.[54] The Fifth Circuit has noted that

---

46. *See Patterson v. McLean Credit Union*, 491 U.S. 164, 217, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989) (Brennan, J., concurring in part, dissenting in part) (citing *McDonnell Douglas*, 411 U.S. at 804–805, 93 S.Ct. 1817).

47. Affidavit of Finis C. Burke at ¶ 5, Pl.'s Resp. Tab 4.

48. *See* Atnip Aff. at ¶ 16.

49. *See* Fuller Aff. at ¶ 19; Affidavit of Sidney B. Hale (hereinafter "Hale Aff.") at ¶ 6, Pl.'s Resp. Tab 3; Affidavit of John L. Childers (hereinafter "Childers Aff.") at ¶ 6, Pl.'s Resp. Tab 5; Jones Aff. at ¶¶ 5 & 9. *See also* Atnip Depo. at 22–24.

50. *See* Fuller Aff. at ¶ 20; Fuller Depo. at 118–22.

51. *See* Correspondence from General Cable to the EEOC at 12, Dft.'s Appendix Tab 4.

52. Atnip Aff. at ¶ 9.

53. *Id.* at ¶ 16.

54. *See, e.g.,* Fuller Aff. at ¶¶ 10–11; Jones Aff. at ¶ 7; Correspondence from General Cable to the EEOC, Dft.'s Appendix Tab 4.

pretext can be inferred from the fact that an employer's proffered reasons are inconsistently stated or have changed over time.[55] In this regard, it is noteworthy that Mark Bewley, General Cable's Plant Manager, states in his affidavit that an employee can qualify for promotion without having any college education or prior supervisory experience if the "employee has an exemplary performance record and superior organizational and managerial skills."[56]

Turning briefly to General Cable's assertion that Fuller was not qualified for promotion because he had received three disciplinary warnings for poor workmanship from Jeff Gallagher in 1996, the court finds support in the summary judgment record for a finding of pretext on this point as well. First, Fuller has presented evidence showing that the mistakes he made were of such a minor nature as to not typically warrant any disciplinary action and that white employees were not disciplined for similar mistakes.[57] Second, Fuller has put on uncontroverted evidence showing that the three warnings he received in relatively quick succession from Gallagher came shortly after he complained to upper management about Galla-

gher's racially discriminatory comments and conduct.[58] It is not insignificant under the circumstances that prior to Gallagher's three write-ups, Fuller had received no disciplinary warnings in his previous sixteen years of employment and had received only four such warnings in his entire tenure at General Cable.[59] Finally, Fuller has submitted evidence supporting the inference that the receipt of disciplinary warnings at General Cable does not disqualify employees for promotion. He notes, for example, that Jeff Gallagher, a white male, has received the more severe sanction of demotion on at least three separate occasions without becoming ineligible for promotion.[60]

In sum, Fuller has presented specific evidence that calls into question the veracity of each of General Cable's stated reasons for not promoting him. By raising a genuine issue of material fact about whether Defendant's proffered explanation is unworthy of credence, Fuller survives General Cable's motion for summary judgment. In addition to the evidence already discussed, Fuller has presented some evidence in this case tending to show that the atmosphere at General Cable was marked by a certain degree of racial animus.[61]

**55.** See *Nichols v. Lewis Grocer*, 138 F.3d 563, 568 (5th Cir.1998) (citing *EEOC v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir.1994)).

**56.** Affidavit of Mark Bewley at ¶¶ 6 & 7, Dft.'s Appendix Tab 18.

**57.** See, e.g., Fuller Aff. at ¶¶ 8 & 6; Fuller Depo. at 63–63 & 127–28; Jones Aff. at ¶ 6.

**58.** See, e.g., Fuller Aff. at ¶¶ 7 & 8; Fuller Depo. at 30.

**59.** See id.

**60.** See, e.g., Fuller Aff. at ¶ 9; Hale Aff. at ¶ 5; Childers Aff. at ¶ 5.

**61.** See, e.g., Fuller Depo. at 30–31 (showing that Jeff Gallagher spoke disparagingly of African–Americans at work and used the term "nigger" on one occasion); Fuller Aff. at ¶ 16; Fuller Depo. at 245 (showing that Fuller was told by the former Human Resources Manager that he was interested in hiring "good

Blacks" and was asked if Fuller knew of any "good Blacks"); Fuller Aff. ¶ 14, Fuller Depo. at 110–13 & 163–64 (showing that Brenda Atnip agreed to discipline a white employee for using the term "nigger" only after considerable delay and when faced with strong pressure from African–American employees to take some action); Jones Aff. at ¶ 5 (indicating that Anthony Jones saw the words "KKK" and "Die Nigger, Die" inscribed on the break room table); Jones Aff. at ¶ 5 (showing that Anthony Jones overheard a white supervisor tell a white employee that he was going to "hire two Nigger women to replace you"); Fuller Depo. at 138; Jones Aff. at ¶ 5 (showing that Atnip told both Fuller and Jones that General Cable uses an unlawful quota system for hiring minorities); Fuller Aff. at ¶ 11; Fuller Depo. at 48; Jones Aff. at ¶ 7 (showing that Atnip tried to dissuade Fuller and Jones from seeking promotions by telling them that being a supervisor was "too hard" and that each would "be better off staying where you are"); Hale Aff. at ¶ 7 (showing that the President of the union that represents all hourly

When relying on the use of circumstantial evidence to establish that an employer has intentionally discriminated against a plaintiff, the plaintiff is free to present "any evidence that, if believed, sustains his burden of proof." [62] Indeed, it is well settled that evidence of pretext and discriminatory intent may take a variety of forms.[63] While each of the alleged occurrences listed in footnote 61 may be insufficient, standing alone, to establish a discriminatory motive on the part of General Cable, they are nevertheless relevant in determining whether the evidence, taken as a whole, creates a reasonable inference that race was a determinative factor in General Cable's decision not to promote Fuller.

### Conclusion

For the reasons given and on the authorities cited, General Cable's motion for summary judgment is hereby DENIED. It is so ORDERED.

employees at General Cable was told by Atnip and her predecessor that the reason no African–American employees were being promoted to supervisory positions was because "[w]e can't get any of them to take it").

62. *Swanson v. General Servs. Admin.,* 110 F.3d 1180, 1185 (5th Cir.1997).

63. *McDonnell Douglas,* 411 U.S. at 804–805, 93 S.Ct. 1817.