709 So.2d 277 (1998)
Kenneth J. DEVILLIER, et al. Plaintiffs-Appellants,
v.
FIDELITY & DEPOSIT COMPANY OF MARYLAND, et al. Defendants-Appellees.
No. 97-1200.
Court of Appeal of Louisiana, Third Circuit.
March 6, 1998.
*278 Robert G. Nida, Alexandria, for Kenneth J. Devillier, et al.
Maura Zivalich Pelleteri, Eugene R. Preaus, New Orleans, for Fidelity & Deposit Company of Maryland.
Thomas Edward Loehn, Jedd Malish, New Orleans, for Fidelity & Deposit Co. of Md. Gen. Liab. Carrier.
David Ramsey Lestage, DeRedder, for City Savings Bank & Trust Co., et al.
George Bartlett Hall, Jr., David M. Korn, New Orleans, for Trinity Universal Ins. Co.
James A. Bolen, Jr., Alexandria, for City Sav. Bank, et al. on Behalf of Trinity Univ.
Before DECUIR, AMY and PICKETT, JJ.
DECUIR, Judge.
Plaintiffs, Kenneth J. Devilllier, Joy M. Lindsay, Eveline D. Nash, Bobbie C. Shirley, and Mary Ernestine Hillman, all former employees of City Savings Bank And Trust Company (CSB), filed suit seeking damages, attorney's fees and punitive damages, as well as injunctive relief, against CSB, its president, Glen Bertrand, individual members of the Board of Directors of CSB, Fidelity & Deposit Company of Maryland (F & D), the directors' and officers' liability insurer and general liability insurer of CSB, and Trinity Universal Insurance Company (Trinity), also general liability insurer of CSB.
Plaintiffs allege that during 1992 and 1994, defendant Bertrand engaged in threatening, hostile, and humiliating treatment of female employees and retaliation against the plaintiffs for opposing Bertrand's allegedly abusive behavior. Specifically, plaintiffs contend that Bertrand's abusive conduct constitutes violations of the Louisiana Commission on Human Rights Act (LCHRA), La.R.S. 51:2231, et seq., prohibiting discrimination because of age and sex and retaliation for opposing illegal employment practices. Plaintiffs further contend that Bertrand's conduct constitutes negligent and/or intentional infliction of mental distress. Additionally, plaintiffs allege that Bertrand's tortious conduct was motivated by an active desire to cause mental anguish and distress, and Bertrand believed with substantial certainty that mental anguish and distress would result from his conduct towards plaintiffs.
As to the Board of Directors, plaintiffs contend that the Board was negligent: (1) in hiring Bertrand and in failing to thoroughly and properly investigate Bertrand's background and reputation; (2) in failing to take immediate and appropriate action to terminate Bertrand's conduct after having been informed of same; and (3) in failing to insure that Bertrand would not retaliate against plaintiffs for opposing Bertrand's practices. Plaintiffs also allege that CSB is obligated under its charter and/or bylaws to indemnify the defendant directors for any amounts they may be legally obligated to pay as a result of the claims asserted by plaintiffs. Finally, plaintiffs allege that the defendant Bank and *279 the Board are vicariously liable for the acts of Glen Bertrand under the doctrine of respondeat superior.
A number of peremptory exceptions and motions for summary judgment were filed by defendants on a variety of issues, and three separate judgments were rendered.
A judgment rendered on April 3, 1997, granted the motion for summary judgment on behalf of F & D in its capacity as the comprehensive general liability insurer of CSB.
By judgment rendered April 11, 1997, the trial court sustained in part and denied in part the peremptory exception of no cause of action filed by Trinity. Specifically, the trial court sustained the exception: (1) as to plaintiffs' claims against defendant Bertrand individually for violation of La. R.S. 51:2231, et seq.; (2) as to plaintiffs' claims for negligent infliction of emotional distress; (3) as to plaintiffs' claims against the individual members of the Board of Directors; (4) as to plaintiffs' allegations of negligent hiring and retention of defendant Bertrand against the Board and CSB; and (5) as to plaintiffs' demand for punitive damages. The trial court denied Trinity's exception in part ruling that: (1) plaintiffs' petition states a cause of action for intentional infliction of emotional distress against Bertrand individually; (2) plaintiffs' petition states a cause of action for retaliation against CSB; and (3) plaintiffs' petition states a cause of action for sex discrimination against CSB.
The judgment of April 11, 1997, also granted in part and denied in part the motion for summary judgment filed by F & D on its directors' and officers' liability policy (D & O policy). Specifically, the trial court granted the motion ruling: (1) that the D & O policy does not provide coverage for any claim against the directors and officers of CSB committed or alleged to have been committed prior to September 29, 1993; (2) that the D & O policy does not provide coverage for the vicarious liability of CSB; and (3) dismissing plaintiffs' claims for attorney's fees and for punitive damages. The motion for summary judgment by F & D was denied in part, the trial court ruling that the "insured v. insured" exclusion and the "bodily injury" exclusion were inapplicable.
By the judgment of June 23, 1997, the trial court granted Trinity's motion for summary judgment finding that Trinity's comprehensive general liability policies do not provide coverage for the claims asserted by plaintiff.
Thus, remaining are plaintiffs' causes of action against CSB under La.R.S. 51:2231, et seq., and against defendant Bertrand and CSB for intentional infliction of emotional distress.
Plaintiffs appeal contending that the trial court erred: (1) in finding that only employers are liable for harassment or discrimination and retaliation, and that Glen Bertrand is not an "employer" under La.R.S. 51:2231, et seq.; (2) in finding that neither F & D's nor Trinity's comprehensive general liability policies provide coverage for plaintiffs' claims; (3) in pretermitting the question as to whether F & D's directors' and officers' liability policy provides coverage for attorney's fees; and (4) in finding that punitive damages are unavailable under La.R.S. 51:2231, et seq.

"Employer" Under La.R.S. 51:2232(4)
The trial court ruled that defendant Bertrand is not an "employer" as defined in La.R.S. 51:2232(4)[1] and dismissed plaintiffs' claims against Bertrand in his individual capacity for violation of the LCHRA, established by La.R.S. 51:2231, et seq. The stated purpose of the enactment of the LCHRA is set forth in La.R.S. 51:2231(A) in pertinent part as follows:
A. It is the purpose and intent of the legislature by this enactment to provide for execution within Louisiana of the policies embodied in the Federal Civil Rights Act of 1964, 1968, and 1972 and the Age Discrimination in Employment Act of 1967...
The term "employer" is defined in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(b), et seq. as "a person engaged in an industry affecting commerce ... and any agent of such person ..." (Emphasis added.)
*280 La.R.S. 51:2232(4) defines "employer" as follows:
(4) "Employer" means the state or any of its political subdivisions, any person employing eight or more persons within the state, or any person acting as an agent of an employer, directly or indirectly.
(Emphasis added.)
The trial court in written reasons recognized that the LCHRA "closely tracks the Federal Civil Rights Act of 1964, 1968, and 1972," and concluded from federal jurisprudence that the individual employee charged with discriminatory actions is not individually liable. The trial court concluded that the "agent" provision in the LCHRA was to incorporate respondeat superior liability under La.R.S. 51:2232(4), as it is in Title VII of the Civil Rights Act.
Plaintiffs argue that the definitions of "employer" in the federal and state statutes vary, and the state definition should be construed more broadly. Plaintiffs also contend that supervisory employees who have the attributes of an employer such as the power to hire and fire are considered employers under Title VII. Specifically, they argue that because defendant Bertrand was responsible for personnel or human resources and had the power to hire and fire and other attributes of an employer, he is subject individually to suit as an "employer" under the LCHRA.
We commence our discussion by noting that when interpreting our own law, it is appropriate to consider interpretations of similar federal statutes. Craven v. Universal Life Ins. Co., 95-1168 (La.App. 3 Cir. 3/6/96); 670 So.2d 1358, writ denied, 96-1332 (La.9/27/96); 679 So.2d 1355; Polk v. Pollard, 539 So.2d 675 (La.App. 3 Cir.1989). In Sims v. Brown & Root, 889 F.Supp. 920 (W.D.La.1995), affirmed, 78 F.3d 581 (5th Cir.1996), cert. denied, ___ U.S. ___, 117 S.Ct. 68, 136 L.Ed.2d 29 (1996), the plaintiff brought a sexual harassment claim under Title VII and La.R.S. 51:2231, et seq., against her employer Brown & Root and Frank Brossett, a project manager for Brown & Root. Sims interviewed with Brossett for her job at Brown & Root. One of Sims' allegations was that because she declined Brossett's sexual advances, he reduced her pay. The court in Sims referring to La.R.S. 51:2231, stated:
... This statutory scheme is a "mirror image" of Title VII. See Fishel v. Farley, 1994 WL 90325 (E.D.La.1994); see also Bennett v. Corroon & Black Corp., 517 So.2d 1245 (La.App. 4th Cir.1987), writ denied, 520 So.2d 425 (La.1988). Thus, in addressing Sims' Title VII claim, this court is also deciding Sims' state law sexual harassment allegation.
Id. at 925, Footnote 3.
Our own federal appellate court has held in Grant v. Lone Star Co., 21 F.3d 649, 653 (5th Cir.1994), cert. denied, 513 U.S. 1015, 115 S.Ct. 574, 130 L.Ed.2d 491 (1994) that Title VII liability does not attach to defendants in their individual capacity. The court in Grant found that plaintiff in that case failed to offer any persuasive argument why Congress would not have intended to protect private employees as well as public employees "from individual Title VII liability," noting that "presumably private employees still could be liable for violations of state tort and contract law, such as intentional infliction of emotional distress."[2]
Furthermore, the court in Grant cites with approval Miller v. Maxwell's Int'l Inc., 991 F.2d 583 (9th Cir.1993), cert. denied, 510 U.S. 1109, 114 S.Ct. 1049, 127 L.Ed.2d 372 (1994), wherein the Ninth Circuit Court of Appeals rejected plaintiff's claim under Title VII against defendants personally stating that Congress assessed civil liability only against an employer under Title VII. The court rejected the notion that supervisory personnel and other agents of the employer are themselves employers for purposes of Title VII liability. Furthermore, the court in Miller observed that the purpose of the "agent" provision was to incorporate respondeat superior liability into Title VII, and found no reason to extend the liability of individual employees beyond the respondeat superior principle intended by Congress.
*281 Likewise, the purpose of the "agent" provision in the LCHRA was to incorporate respondeat superior. We note that the Fifth Circuit in Grant also cites the language in Miller that Title VII contemplates liability for the employer who has the ability to discipline the employee or agent. Neither our state legislature nor Congress intended to include liability for individual employees under Title VII or LCHRA.
We conclude that the trial court was correct in finding that the plaintiffs failed to state a cause of action against defendants Bertrand and the individual members of the Board of Directors for violation of the LCHRA. Any liability incurred as a result of Bertrand's alleged actions was incurred in his capacity as "agent" of CSB which, if plaintiffs' allegations prove true, would be liable for its agent's actions as well as the actions of the Board under the doctrine of respondeat superior.

Coverage Under the General Liability Policies of F & D and Trinity
Plaintiffs advance several arguments under their assignment of error that the trial court erred in finding that neither the comprehensive general liability policies of F & D nor Trinity provide coverage for plaintiffs' claims.
First, plaintiffs contend that F & D did not submit an affidavit or evidence to identify which general liability policy was issued to CSB and there was not competent evidence submitted by F & D in this regard for the purposes of summary judgment. Plaintiffs in brief allege that F & D attached to its memorandum in support of its motion for summary judgment a comprehensive general liability policy providing coverage to CSB for the period July 1, 1994 to July 1, 1995. Plaintiffs contend that policy did not contain an "Employment-Related Practices Exclusion" and that F & D subsequently filed another memorandum attaching thereto a different policy containing an "Employment-Related Practices Exclusion." Plaintiffs argue that the trial court relied upon this exclusion in finding no coverage under the F & D policy, and that a material issue of fact exists as to the identity of the general liability policy issued by F & D to CSB.
Initially, we note that plaintiffs have failed to include a reference to the place in the record where plaintiffs may have objected to the fact that no affidavit or sufficient evidence was presented to establish the identity of the comprehensive general liability policy issued by F & D as required by Uniform RulesCourts of Appeal, Rule 2-12.4. Nor have the plaintiffs provided a reference in the record where this issue was ever raised. Pursuant to Rule 2-12.4, this court may disregard this argument. Nevertheless, upon examination of the first policy submitted as Exhibit A by F & D in support of its motion for summary judgment, we note that the index of that policy lists the "Employment-Related Practices Exclusion." The first page of the policy includes a section which provides: "Form(s) and Endorsement(s) made a part of this policy at time of issue: See the Master Policy Index attached." The policy submitted with the supplemental memorandum does not appear to be a "different" policy as plaintiffs would have this court believe. We find plaintiffs' contention in this regard to be without merit. The "Employment-Related Practices Exclusion" provides in pertinent part:
This insurance does not apply to:
"Bodily injury" to:
(1) a person arising out of any:
(a) Refusal to employ that person;
(b) Termination of that person's employment; or
(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person ...
The policy also includes identical exclusionary language as to "personal injury." Plaintiffs do not allege ambiguity in the exclusion found in the F & D comprehensive general liability policy nor do we find any ambiguity. The dismissal of F & D in its capacity as the comprehensive general liability insurer was not erroneous.
Because we find that the trial court did not err in dismissing F & D in its capacity as *282 comprehensive general liability insurer, we need not address any further contentions as to policy language under F & D's general liability policy and address only plaintiffs' remaining arguments as to the Trinity policy.
Next, plaintiffs argue that a pattern of harassment constitutes an "occurrence" under the general liability policy; that the indemnity provisions of the By-Laws of CSB qualify as an "insured contract" under the policy issued by Trinity; that plaintiffs' damages constitute property damage under the Trinity policy; and that plaintiffs' damages for mental anguish and emotional injury constitute "personal injury" under the terms of the Trinity policy.
The policy in question provides coverage for damages due to "bodily injury" or "property damage" caused by an "occurrence." The term "occurrence" under the policy is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The issues presented in the case sub judice are identical to those before this court in Pylant v. Lofton, 626 So.2d 83 (La.App. 3 Cir.1993), wherein this court held that the comprehensive general liability policies at issue in that case, which required that bodily injury or property damage be caused by an occurrence and which excluded coverage for intentional acts, did not require insurers to defend employers against charges of on-the-job sexual harassment. The definition of "occurrence" in the policy at issue in Pylant is almost identical to that in the instant case, i.e. "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured."
Furthermore, this court in Pylant held that the exclusion in that policy for "intentional acts" was applicable stating "it is clear that defendant's actions were intentional and not accidental." Id. at 87-88. The "intentional act" exclusion in the case sub judice is identical to the same exclusion in the Pylant case. Plaintiffs' remaining arguments as to coverage under the general liability policies are without merit and need not be addressed. The ruling of the trial court finding no coverage under the comprehensive general liability policies of Trinity is not erroneous.

Attorney's Fees and Punitive Damages
Plaintiffs contend that the trial court erred in pretermitting the question as to whether F & D's directors' and officers' liability policy provides coverage for attorney's fees. Plaintiffs also argue that the trial court erred in finding that punitive damages are not available under La.R.S. 51:2231, et seq. The trial court stated in reasons for judgment that attorney's fees would not be allowed in the case of an intentional tort under the policy and that punitive damages are not recoverable. We agree.
We note that F & D's policy makes no mention of attorney's fees and specifically excludes coverage for "fines or penalties imposed by law, punitive or exemplary damages." La.R.S. 51:2231, et seq. allows for recovery of "actual damages," together with court costs and reasonable attorney's fees. Plaintiffs, if successful in their action under the statute, would be allowed to recover attorney's fees, but not under the F & D policy. Furthermore, attorney's fees are not recoverable unless authorized by statute or provided by contract. See General Motors Acceptance Corp. v. Meyers, 385 So.2d 245 (La.1980); Woodmen of the World Life Ins. Society v. Hymel, 610 So.2d 195 (La.App. 3 Cir.1992), writ denied, 612 So.2d 103 (La. 1993).
The LCHRA does not include a provision for punitive damages. Punitive damages cannot be awarded unless authorized by statute. International Harvester Credit v. Seale, 518 So.2d 1039 (La.1988). The trial court's rulings as to attorney's fees and punitive damages are not erroneous.
The judgments of the trial court are affirmed. Costs of appeal are assessed to plaintiffs-appellants.
AFFIRMED.
NOTES
[1] Repealed by Acts 1997, No. 1409 § 4 eff. August 1, 1997.
[2] Id. at 651, Footnote 3.