Kimberly KIMBLE

v.

## GEORGIA PACIFIC CORPORATION

No. CIV.A.00–744–D.

United States District Court,
M.D. Louisiana.

Nov. 7, 2002.

Dan Michael Scheuiermann, Baton Rouge, LA, for plaintiff.

Cynthia M. Chemay, Melanie Moreland Hartmann, Carolyn S. Parmenter, Kean, Miller, Hawthorne, D'Armond, McCowan & Jarman, Baton Rouge, LA, Rayne Rasty, George-Pacific Depy., Atlanta, GA, for defendant.

## RULING ON MOTION FOR SUMMARY JUDGMENT

BRADY, District Judge.

This matter is before the Court on a motion for summary judgment (doc. 25) filed by Georgia Pacific Corporation ("Defendant Corporation"). Kimberly Kimble ("Plaintiff") filed an opposition to the motion for summary judgment, to which Defendant Corporation filed a reply brief. There is no need for oral argument. Sub-ject matter jurisdiction in this Court exists pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a).

## I. PROCEDURAL POSTURE, FAC-TUAL BACKGROUND, AND SUM-MARY OF ARGUMENTS

Plaintiff brings this lawsuit alleging the following: (1) a violation of the Fourteenth Amendment of the United States Constitution; (2) violations of Article I §§ 3, 4, and 5 of the Louisiana State Constitution; (3) a violation of 42 U.S.C. § 1981(a); (4) sex discrimination under federal Title VII and Louisiana Employment Discrimination laws; and (5) a violation the Equal Pay Act. Plaintiff also alleges unlawful retaliation under federal Title VII and Louisiana Employment Discrimination Laws. Of these, only the claims relating to: (4) sex discrimination under federal Title VII and Louisiana Employment Discrimination laws; (5) the Equal Pay Act, and unlawful retaliation under federal Title VII and Louisiana Employment Discrimination laws will be discussed at length. Plaintiff's apparent abandonment of her claims pertaining to: (1) a violation of the Fourteenth Amendment of the United States Constitution;[1] (2) a violation of Article I §§ 3, 4, and 5 of the Louisiana State Constitution;[2] and (3) a violation of 42 U.S.C. § 1981(a)[3] by her failure to respond to Defendant Corporation's summary judg-

---

1. Indeed, Plaintiff's failure to even allege the requisite state action with regard to this claim entitles Defendant Corporation to summary judgment on this claim. *See Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 172–73, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972).

2. Plaintiff's failure to allege the requisite state action with regard to these Louisiana state constitutional claims entitles Defendant Corporation to summary judgment on these claims as well. *Vangraff, Inc. v. McCearley,* 314 So.2d 483, 485 (La.Ct.App.1975).

3. Plaintiff has not alleged discrimination other than sex and it is well settled that 42 U.S.C. § 1981(a) does not provide a remedy for that particular form of discrimination. *See Run-yon v. McCrary,* 427 U.S. 160, 167, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976); *Shuman v. Gen. Motors Corp.,* 914 F.2d 258, 1990 WL 127550 at *2 (6th Cir.1990); *DeGraffenreid v. Gen. Motors Assembly Div.,* 558 F.2d 480, 486 n. 2 (8th Cir.1977). Therefore, Defendant Corporation is entitled to summary judgment on this claim.

ment argument[4] persuades this Court to grant Defendant Corporation's Motion for Summary Judgment on these claims without detailed explanation.

The submissions of the parties, considered in the light most favorable to Plaintiff, establish the following undisputed material facts for the purposes of Defendant's summary judgment motion.

Plaintiff began working for Defendant Corporation in August of 1985. In March of 1998, Plaintiff was permanently transferred to the position of Production Scheduler in the Scheduler Department. The Production Scheduler position in the Scheduler Department is an exempt position that requires making the determinations regarding the scheduling of sheeter machines to maximize production.

As of November 1999, Plaintiff's co-workers included Holly Lipscomb, Libby Palmer, and Greg Stephens. Greg Stephens began working for Defendant Corporation in 1985, and had been employed as a scheduler for over 6 years as of November 1999. At that time, Greg Stephens earned considerably more than Plaintiff. The available evidence suggests that this pay disparity is due to the fact that Greg Stevens had more experience with complex machinery, more experience as a Scheduler, and broader job duties than Plaintiff.

On or about November 24, 1998, Defendant Corporation notified Plaintiff that she was required to attend a meeting on November 27, 1998. Over the next two days, Defendant Corporation reminded Plaintiff about the mandatory November 27 meeting. Plaintiff indicated that she would attempt to attend the meeting, providing that she could obtain a babysitter. Plaintiff was ultimately unable to obtain a babysitter, and although she made arrangements to be available by telephone and represented by a co-worker at the meeting, Plaintiff did not attend the November 27, 1998 meeting. Defendant Corporation therefore suspended Plaintiff for one week without pay effective December 7, 1998, claiming that Plaintiff's failure to attend the November 27, 1998 meeting was insubordination. Plaintiff admits that she never directly told her supervisor that she would not attend the meeting, and that it is reasonable for Defendant Corporation to schedule meetings and require employees to attend meetings.

Following the one-week suspension, Plaintiff allegedly informed more than one co-worker that she could get the time back that she spent on suspension without pay by using a connection that she had at her doctor's office to obtain sick leave documentation.[5] Plaintiff's co-workers informed Defendant Corporation regarding Plaintiff's alleged statements.

In December 1998, the annual review process was ongoing. The available evi-

---

**4.** Plaintiff has the burden of producing more than a mere scintilla of evidence in order to survive a summary judgment motion, she may not simply stand on conclusory allegations in the pleadings. *See Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd.*, 40 F.3d 698, 713 (5th Cir.1994)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Furthermore, this Court is under no duty to sift through the record in search of evidence to support Plaintiff's opposition to Defendant Corporation's motion. *See Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th

Cir.1994)(citing *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 (5th Cir.1992)).

**5.** Although Plaintiff submitted an affidavit dated April 9, 2002 with her Memorandum Opposing Summary Judgment contradicting this point, Plaintiff's sworn Deposition dated March 30, 2001 answered affirmatively to the question "So if employees told management that you had told them that, they're probably telling the truth, right?" *See* Plf. D. 76:7–11.

dence reflects that Defendant Corporation was generally pleased with Plaintiff's on the job performance until the end of the 1998 review cycle. On or about December 8, 1998, a document was created in the human resources department that indicated Plaintiff's performance rating for the year was a "2." A performance rating of "2" indicates that an employee is meeting minimum job requirements. When the performance rating was finalized is somewhat unclear.

Plaintiff may have attempted to contact Defendant Corporation's internal Equal Employment Opportunity office ("internal EEO office") as early as December 7, 1998, however she was unable to lodge a complaint regarding her suspension resulting from the November 27, 1998 meeting until December 11, 1998. At that time, Plaintiff complained that she felt the suspension was unfair and that she was being discriminated against because of her sex.[6]

On January 11, 1999, Defendant Corporation informed Plaintiff of her 1998 annual performance rating of "2" and awarded her a 1% pay raise. Four days later, on January 15, 1999, Plaintiff again contacted Defendant Corporation's internal EEO office and lodged a complaint regarding her 1998 annual performance rating, alleging that the low rating was retaliation for her December 11, 1998 internal EEO office complaint.

In March of 1999, Defendant Corporation informed Plaintiff that a secondary review of her performance would take place in July of 1999 to determine whether her performance had improved. Consistent with Defendant Corporation's procedures, Plaintiff would be eligible for a pay raise if Plaintiff's performance had improved at that time. Defendant Corporation ultimately determined that Plaintiff had not sufficiently improved and thus, Plaintiff did not receive a pay raise in July of 1999. One month later, Plaintiff was asked to reschedule previously approved vacation days for August 5 and August 6, 1999 due to a conflict in staffing needs. Plaintiff complied with this request.

Plaintiff was absent from work for the period October 18, 1999 through October 22, 1999. Upon returning to work, Plaintiff submitted documentation ("the note") from Dr. Rhodes purportedly excusing her absence to Defendant Corporation. Defendant Corporation was suspicious of the note, as the handwriting thereon resembled the Plaintiff's, and attempted to verify the note's authenticity with Dr. Rhodes. Dr. Rhodes did not respond to Defendant Corporation's requests. Defendant Corporation then submitted the note to a handwriting expert along with samples of Plaintiff's handwriting for verification. The expert concluded that the note in question was written by the Plaintiff, and submitted a report with this conclusion to Defendant Corporation on November 17,

---

**6.** Both Plaintiff's complaint as transcribed by Defendant Corporation's internal EEO office and her deposition state that Plaintiff felt she was being discriminated against because she was "a mother." Defendant Corporation's counsel rightly points out that discrimination against employees with child rearing responsibilities is not actionable under federal Title VII and Louisiana Employment Discrimination laws. However, courts have neither expected the average person to describe perceived employment discrimination using the precise legal terms of art that have become the language of legal professionals nor dismissed a case on such grounds. *See Terrell v. U.S. Pipe & Foundry Co.*, 644 F.2d 1112, 1123 (5th Cir.1981). Furthermore, this Court notes that discrimination against employees on the basis of motherhood, or rather, a propensity for motherhood, is a potential basis for a viable sex discrimination claim. *See generally, Int'l Union v. Johnson Controls, Inc.*, 499 U.S. 187, 111 S.Ct. 1196, 113 L.Ed.2d 158 (1991).

1999.[7] Plaintiff does not dispute that falsification of documents is a reasonable ground for termination of employment and has not identified any similarly situated individual who was not fired after submitting a falsified document to Defendant Corporation.

Plaintiff admits to engaging in inappropriate conduct on November 15, 1999 when she was overheard yelling obscenities in the office. Although Plaintiff admits that her behavior was inappropriate, she testified in her deposition that such behavior was not uncommon amongst her co-workers and that she would act the same way today. On November 22, 1999, Defendant Corporation terminated Plaintiff's employment in light of the November 15, 1999 incident and its belief that the note for her absences October 18, 1999 through October 22, 1999 was forged.

Following Plaintiff's termination, Holly Lipscomb, a female, took over Plaintiff's job duties and was given a promotion. On November 29, 1999, Plaintiff initiated a complaint of employment discrimination with the Louisiana Commission on Human Rights. One month later, on December 29, 1999, Plaintiff filed a complaint ("the Charge") with the Equal Employment Opportunity Commission ("EEOC"). The Charge contains allegations that Plaintiff was retaliated against from January 18, 1999 until November 22, 1999 due to her filing of complaints alleging sex discrimination and retaliation with Defendant Corporation's internal EEO office. The retaliatory acts Plaintiff alleged were: (1) her unsatisfactory performance evaluation in 1998 with a minimal salary increase, (2) a July 1999 failure to receive a pay increase; and (3) her November 1999 termination. Plaintiff received a right to sue notice from the EEOC on July 19, 2000 and commenced this lawsuit on October 5, 2000.

In moving for summary judgment, Defendant Corporation asserts that: (1) the sex discrimination claims are time barred under federal Title VII and Louisiana state Employment Discrimination laws because the events/acts complained of occurred more than 300 days before the filing of the Charge, or alternatively, Plaintiff's failure to exhaust administrative remedies with regard to the Title VII sex discrimination claim[8] by including the specifics of sex discrimination in her Charge deprives this Court of jurisdiction to hear the claim; (2) even if the sex discrimination claim was not time barred

---

**7.** As an attachment to her Memorandum in Opposition to Defendant Corporation's Motion for Summary Judgment, Plaintiff submitted an affidavit from LaToya King dated September 11, 2001, in which LaToya King claimed authorship of the note in question. Plaintiff has also retained her own handwriting expert, who has concluded that LaToya King is the author of the note. It was not until the deposition of Plaintiff's handwriting expert on January 29, 2002 that Defendant learned about Plaintiff's allegation that the author of the note was LaToya King. Defendant Corporation is correct that Plaintiff may not fail to timely disclose information and then seek to penalize Defendant Corporation for not possessing it. No motion for exclusion of evidence or sanctions for discovery abuses has been made as to this issue.

**8.** In her complaint, Plaintiff alleged a myriad of incidents giving rise to her federal and state sex discrimination claims. Based on the briefs of the parties, it seems the basis for the sex discrimination claim arises from seven events: (1) the November 1998 suspension; (2) the 1998 unsatisfactory evaluation with minimal pay increase; (3) July 1999 failure to receive a pay increase; (4) August 1999 vacation rescheduling; (5) disparate treatment of Plaintiff relative to Greg Stephens from 1995 to 1999; (6) three offensive e-mails that were circulated in the office some time between 1996 and November of 1999; and (7) her November 1999 termination.

and Plaintiff had exhausted the requisite administrative remedies, Plaintiff has not established a *prima facie* case of sex discrimination; (3) even if Plaintiff had established the *prima facie* case, she cannot overcome Defendant Corporation's legitimate non-discriminatory reasons for its employment actions; (4) Plaintiff has not established a *prima facie* case of retaliation nor can she overcome Defendant Corporation's legitimate non-discriminatory reasons for its employment actions; and (5) Plaintiff has failed to establish a *prima facie* case under the Equal Pay Act. Plaintiff disagrees with Defendant Corporation's assessment of the case, arguing that: (1) the sex discrimination claims are not time barred under a continuing tort theory, and that all jurisdictional administrative requirements are met because the sex discrimination claims could reasonably be expected to grow out of the EEOC Charge; (2) the *prima facie* case has been established with regard to the sex discrimination, retaliation, and Equal Pay Act claims; and (3) Defendant Corporation's legitimate non-discriminatory reasons for its employment actions are mere pretext for discriminatory animus with regard to all three claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, answers to interrogatories, admissions, depositions, and affidavits on file indicate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the burden at trial rests on the non-movant, as it does here, the movant need only demonstrate that the record lacks sufficient evidentiary support for the non-movant's case. *See id.* The movant may do this by showing that the evidence is insufficient to prove the existence of one or more elements essential to the non-movant's case. *Id.*

Although this Court considers the evidence in the light most favorable to the non-movant, the non-movant may not merely rest on allegations set forth in the pleadings. Instead, the non-movant must show that there is a genuine issue for trial. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. Conclusory allegations and unsubstantiated assertions will not satisfy the non-movant's burden. *See Grimes v. Tex. Dep't of Mental Health,* 102 F.3d 137, 139–40 (5th Cir.1996). If, once the non-movant has been given the opportunity to raise a genuine factual issue, no reasonable juror could find for the non-movant, summary judgment will be granted. *See Celotex,* 477 U.S. at 322, 106 S.Ct. 2548; *see also* Fed. Rule Civ. P. 56(c).

## III. ANALYSIS AND CONCLUSIONS

### A. Sex Discrimination Claims

#### 1. Timely Filing & Jurisdictional Prerequisites

*a.) Federal Title VII Sex Discrimination Claim*

Defendant Corporation asserts that Plaintiff's sex discrimination claim is time barred under federal Title VII because the events/acts complained of occurred more than 300 days before the filing of the EEOC Charge, or alternatively, Plaintiff's failure to exhaust administrative remedies with regard to the sex discrimination claim by including the specifics of sex discrimination in her EEOC Charge deprives this Court of jurisdiction to hear the claim.

 It is true that exhaustion of administrative remedies is a jurisdictional prerequisite to an action for sex discrimi-

nation under Title VII.[9] *See e.g., Jones v. Grinnell Corp.,* 235 F.3d 972, 974 n. 1 (5th Cir.2001); *Brown v. General Servs. Admin.,* 425 U.S. 820, 833, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). However, the Fifth Circuit has not required strict interpretation with regard to the scope of an EEOC charge. *See Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 465 (5th Cir. 1970); *Danner v. Phillips Petroleum Co.,* 447 F.2d 159, 161–62 (5th Cir.1971). While Defendant Corporation is correct that Plaintiff's EEOC Charge only alleges retaliation, the Charge itself includes a reference to prior allegations of sex discrimination as a basis for the retaliation claim. Therefore, it cannot be said with any degree of certainty that a sex discrimination claim[10] would not reasonably be expected to grow out of the scope of the EEOC investigation into the retaliation charge in this particular instance.[11] Because it is within this Court's jurisdiction to consider claims that could be reasonably expected to grow out of the scope of the EEOC's investigation, *see Young v. City of Houston,* 906 F.2d 177, 179 (5th Cir.1990), Defendant Corporation's Motion for Summary Judgment alleging lack of jurisdiction with regard Title VII sex discrimination claims is denied.

■ Despite this denial regarding jurisdiction over the Title VII sex discrimination claim, Defendant Corporation is quite correct that Louisiana is a deferral state,[12] and therefore any Title VII sex discrimination claim that is not filed within 300 days of occurrence would be dismissed as untimely absent a showing of the rather unusual circumstances of a "continuing violation." *See* 42 U.S.C. § 2000e–5(e)(1); *Celestine v. Petroleos de Venezuella, SA,* 266 F.3d 343, 351 (5th Cir.2001).

■ The continuing violation theory would relieve Plaintiff of establishing that

---

**9.** Louisiana Employment Discrimination laws have no administrative exhaustion requirement, jurisdiction in this Court is therefore proper.

**10.** Plaintiff's sex discrimination claim regarding 3 offensive e-mails appears to this Court to be an allegation of sexually hostile work environment. Absent briefing by the parties to the contrary, this Court grants Defendant's Motion for Summary Judgment as to this issue. Not only has the Plaintiff failed to make out a *prima facie* case of hostile environment, three isolated incidents over several years are not likely to amount to a "discriminatory change in the terms and conditions of employment." *See Shepherd v. Comptroller of Public Accounts,* 168 F.3d 871, 874 (5th Cir.1999)(quoting *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

**11.** This Court notes that this result should be a rare occurrence because sex discrimination claims cannot be said to naturally grow out of the scope of a retaliation claim. *See Caldwell v. ServiceMaster Corp.,* 966 F.Supp. 33, 49 (D.D.C.1997).

**12.** A deferral state is one in which state law prohibits discrimination in employment and a state agency has been established to grant or seek relief for such discriminatory practice. *See Clark v. Resistoflex Co.,* 854 F.2d 762, 765 n. 1 (5th Cir.1988). As of April 1994, the Louisiana Commission on Human Rights has been funded and operating, thereby making Louisiana a deferral state since that time. La.Rev.Stat. § 51:2233; G. Guidry, *Employment Discrimination Claims in Louisiana,* 45 La. B.J. 240, 241 (Oct.1997); *see also Clark,* 854 F.2d at 765 (applying similar provision of federal Age Discrimination in Employment Act); *Nelson v. Shoney's, Inc.,* 1997 WL 567957, at *7 (E.D.La. Sept.10, 1997)(applying 300–day statute of limitations to complaint of race discrimination). While the Fifth Circuit has not definitively ruled that Louisiana is a deferral state, it has frequently applied that 300–day statute of limitations to cases arising in Texas, which is a deferral state. *See e.g., Messer v. Meno,* 130 F.3d 130, 134 (5th Cir.1997); *Griffin v. City of Dallas,* 26 F.3d 610, 612 (5th Cir.1994); *Washington v. Patlis,* 868 F.2d 172 (5th Cir.1989); *Urrutia v. Valero Energy Corp.,* 841 F.2d 123, 125 (5th Cir.1988).

all of the discriminatory conduct occurred within the 300–day period if she could show a series of related acts, with one or more of those acts falling within the limitations period. *See Berry v. Bd. Of Supervisors of L.S.U.*, 715 F.2d 971, 979 (5th Cir.1983). The Fifth Circuit has explained that the core idea of this theory is that equitable considerations may require that the filing period be tolled until facts supportive of the Title VII discrimination charge are or should be evident to a reasonable person. *See Glass v. Petro–Tex Chem. Corp.*, 757 F.2d 1554, 1560–61 (5th Cir.1985) (internal quotations, citations, and a footnote omitted). The focus is on determining what event, "in fairness and logic should have alerted the average person to act to protect her rights." *Id.* However, the mere perpetuation "of the effects of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period." *Id.* at 1561. Under such circumstances, Plaintiff must be able to show there is a "persisting and continuing system of discriminatory practices in promotion or transfer [that] produces effects that may not manifest themselves as individually discriminatory except in cumulation over time." *Id.; see also Hendrix v. City of Yazoo City, Miss.*, 911 F.2d 1102, 1103–04 (5th Cir.

1990); *Rendon v. AT & T Tech.*, 883 F.2d 388, 395–96 (5th Cir.1989).

The Plaintiff has alleged that her sex discrimination claim arises from seven events: (1) the November 1998 suspension; (2) the 1998 unsatisfactory evaluation with minimal pay increase; (3) July 1999 failure to receive a pay increase; (4) August 1999 vacation rescheduling; (5) disparate treatment of Plaintiff relative to Greg Stephens from 1995 to 1998;[13] (6) three offensive e-mails that were circulated in the office at some point between 1996 and 1999; and (7) the November 1999 termination.

The only events that are clearly within the 300–day period are: (3) the July 1999 failure to receive a pay increase; (4) August 1999 vacation rescheduling; and (7) the November 1999 termination.[14] An argument could be made that (1) the November 1998 suspension and (2) the 1998 low evaluation with minimal pay increase were interrelated acts to each other based on their near immediate temporal proximity, but there has been no showing that these events were not discrete acts and no showing of interrelatedness between these two events and any other allegedly discriminatory act with regard to sex discrimination.[15] Furthermore, neither the November 1998 suspension nor the 1998 low evaluation with minimal pay raise

---

**13.** Plaintiff's basis for claiming disparate treatment seems to be centered on three issues: (1) Greg Stephens was provided equipment in 1995 that Plaintiff was not when she transferred into the department in March 1998; (2) Greg Stephens was assigned to a Special Project in 1998; and (3) Greg Stephens was paid more than Plaintiff.

**14.** Plaintiff's EEOC Charge was not filed until December 29, 1999, and therefore the 300–day period commenced on March 4, 1999.

**15.** There is an argument that the 1998 low evaluation with minimal pay increase and the July 1999 would be part of a series of nondiscrete interrelated acts, because the 1998 low

evaluation triggered the reevaluation and pay increase consideration in July of 1999. However there has been no showing by Plaintiff that each act would not have been apparent as individually discriminatory on the basis of sex. To the contrary, the evidence suggests that Plaintiff was well aware of her rights, as she filed contemporaneous complaints with Defendant Corporation's internal Equal Employment Opportunity Office. This finding with regard to sex discrimination does not preclude a "continuing tort theory" exception to the 300–day period for purposes of Plaintiff's federal Title VII retaliation claim, which is discussed at section III.B.1. *infra.*

comes within the 300–day period for Title VII.

Plaintiff admitted that she thought both the November 1998 suspension and the 1998 low evaluation and minimal pay increase were discriminatory when they were received. Indeed, Plaintiff filed internal complaints with Defendant Corporation contemporaneously with these two events. She did not, however, file a charge with the EEOC or complain to the Louisiana Commission on Human Rights. Thus, it cannot be said that Plaintiff was unaware of her rights or that the effects of a "persistent persisting and continuing system of discriminatory practices in promotion or transfer" produced effects that were not manifested as individually discriminatory except in cumulation over time. *See Glass,* 757 F.2d at 1560–61 (5th Cir.1985); *Hendrix,* 911 F.2d at 1103–04 (5th Cir.1990); *Rendon,* 883 F.2d at 395–96 (5th Cir.1989). This same analysis would apply to (5) the disparate treatment of Plaintiff as evidenced by the equipment given to Greg Stephens prior to 1995, and his assignment to a special project in 1998. Defendant Corporation's Motion for Summary Judgment is therefore granted with respect to the Title VII sex discrimination claim with regard to: (1) the November 1998 suspension; (2) the 1998 unsatisfactory evaluation with minimal pay increase; and (5) disparate treatment of Plaintiff relative to Greg Stephens from 1995 to 1998 not involving his pay, as these events are time barred.

Therefore, the only events that may be the basis of Plaintiff's Title VII sex discrimination claim are: (3) the July 1999 failure to receive a pay increase; (4) August 1999 vacation rescheduling; (5) disparate treatment with regard to Greg Stephens' pay; and (7) the November 1999 termination.

### b.) *Louisiana State Sex Discrimination Claim*

■ Plaintiff's Louisiana state sex discrimination claim is subject to a one-year filing requirement. *Harris v. Home Savings and Loan Ass'n,* 663 So.2d 92, 95 (La.Ct.App.1995). Therefore, all Plaintiff's claims that arose more than one year before she filed this lawsuit are time barred. *Id.* Plaintiff filed this lawsuit on October 5, 2000. Only Plaintiff's November 1999 termination and disparate treatment with regard to Greg Stephens' pay clearly fall within the allowable time period. As a result, Defendant Corporation's Motion for Summary Judgment is granted with respect to Plaintiff's Louisiana state sex discrimination claim regarding: (1) the November 1998 suspension; (2) the 1998 unsatisfactory evaluation with minimal pay increase; (3) July 1999 failure to receive a pay increase; (4) August 1999 vacation rescheduling; (5) disparate treatment of Plaintiff relative to Greg Stephens as evidenced by the equipment given to Greg Stephens prior to 1995, and his assignment to a special project in 1998; and (6) three offensive e-mails that were circulated in the office at some point between 1996 and 1999, is granted.

### 2. *Prima Facie Case of Sex Discrimination*

■ Because of applicable time limitations, Plaintiff's federal Title VII sex discrimination claim is therefore considered by this Court to be based on one or more of the following events: (1) the July 1999 failure to receive a pay increase; (2) August 1999 vacation rescheduling; (3) disparate treatment with regard to Greg Stephens' pay; and (4) the November 1999 termination. Similarly, Plaintiff's Louisiana state sex discrimination claim is considered to be based on: (3) disparate treatment with regard to Greg Stephens' pay;

and/or (4) the November 1999 termination. With regard to these claims, Defendant Corporation also argues that Plaintiff has not established a *prima facie* case of sex discrimination under federal Title VII or Louisiana Employment Discrimination laws. For the remainder of this ruling, both the federal and state sex discrimination claims will be considered jointly,[16] and referred to jointly as Plaintiff's "sex discrimination claims."

■■■ In order to establish a *prima facie* case of sex discrimination, Plaintiff must establish that: a.) she belongs to a protected group; b.) she was at all time qualified for the position; c.) she suffered an adverse employment action; and d.) Defendant Corporation treated similarly situated employees outside of the protected category differently. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Sreeram v. L.S.U. Med. Center–Shreveport*, 188 F.3d 314, 318 (5th Cir.1999). It is undisputed that Plaintiff is a woman, and therefore a member of a protected class. The evidence, when viewed in a light most favorable to the Plaintiff, also suggests that she was also qualified for her position. Contrary to Defendant Corporation's assertion, her insubordination by virtue of missing a mandatory meeting in November of 1998 did not make her per se "unqualified" for the position. The First and the Sixth Circuits have ruled that "[t]o be qualified for a position means that the individual was doing his job well enough to rule out the possibility that he was fired for inadequate performance, absolute or relative." *See Wilkins v. Eaton Corp.*, 790 F.2d 515, 521 (6th Cir.1986)(citing *Loeb v. Textron, Inc.,* 600 F.2d 1003, (1st Cir.1979)). Although Plaintiff's failure to attend the November 1998 meeting, presentation of a suspicious looking note in October 1999, and obscene outburst in November 1999, are certainly legitimate grounds for punishment or dismissal at the discretion of her employer, there is no evidence brought forth by the parties that suggests Plaintiff was incapable of doing her job or otherwise unqualified for the purposes of the *prima facie* case.

Similarly, the evidence suggests that Plaintiff suffered an adverse employment action for establishing the *prima facie* case of sex discrimination.[17] Plaintiff has provided scant evidence that she was treated differently from similarly situated individuals on the basis of her sex, other than the pay disparity. However, there is some evidence that other persons engaged in unprofessional activity, such as using foul language in the workplace, and there is no evidence that these individuals were terminated. Therefore, for summary judgment purposes, this Court finds that Plaintiff has made the minimum showing of a *pri-*

---

**16.** Louisiana's Employment Discrimination statute is analyzed under the same standards as Title VII. *See Nichols v. Lewis Grocer*, 138 F.3d 563, 566–67 (5th Cir.1998); *Deloach v. Delchamps, Inc.*, 897 F.2d 815, 818 (5th Cir. 1990); *Devillier v. Fidelity & Deposit Co. of Md.*, 709 So.2d 277, 280 (La.Ct.App.1998).

**17.** Only three of the *remaining* events asserted by the Plaintiff in support of her sex discrimination claim are within the definition of adverse employment action, namely, (1) the August 1999 leave rescheduling, (2) disparate treatment with regard to Greg Stephens' pay, and (3) the November 1999 termination. *See*

*Dollis v. Rubin*, 77 F.3d 777, 781–82 (5th Cir.1995)(holding that Title VII was only meant to address ultimate employment decisions such as hiring, granting leave, discharging, promoting, and compensating). Therefore, for the remainder of this ruling, the basis of the federal Title VII sex discrimination claim will be considered to be one or more of those three events, and the basis for the Louisiana state law sex discrimination claim will be considered to be disparate treatment with regard to Greg Stephens' pay and/or Plaintiff's November 1999 termination.

ma facie case for the sex discrimination claims and Defendant Corporation's Motion for Summary Judgment on this issue is denied.

### 3. Legitimate Non-discriminatory Reasons

■ Once Plaintiff has established a *prima facie* case of sex discrimination, Defendant Corporation must provide "a legitimate, non-discriminatory reason for the challenged employment action." *See Grimes*, 102 F.3d at 140(citing *McDonnell Douglas*, 411 U.S. at 792, 93 S.Ct. 1817). Once the Defendant Corporation has come forward with a legitimate non-discriminatory reason, the inference of discrimination raised by the presentation of Plaintiff's prima facie case drops out and Plaintiff must show that defendant intentionally discriminated against her on the basis of her sex. *See id.* (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–57, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Plaintiff may show intentional discrimination by direct or circumstantial evidence of discriminatory intent. *See Grimes*, 102 F.3d at 140–41 (internal citations omitted). Because Plaintiff offers no direct proof of discrimination, the analysis turns on whether Plaintiff can show sufficient circumstantial evidence that Defendant Corporation's legitimate non-discriminatory reasons for its employment actions are unworthy of credence.

Without question, Defendant Corporation has presented evidence that constitutes a legitimate, non-discriminatory reason for its employment actions challenged by Plaintiff as evidence of sex discrimina-tion.[18] The relevant actions are as follows: 1) the August 1999 leave and rescheduling; 2.) disparate treatment with regard to Greg Stephens' pay; and 3.) the November 1999 termination.

First, Defendant Corporation claims that leave is occasionally rescheduled, and that its request that Plaintiff reschedule her planned leave in August of 1999 was not unusual. Plaintiff does not dispute this fact, and does not point to any evidence other than her subjective belief that this action was motivated by discriminatory animus. She does not allege that any other employee outside of her protected class was allowed to take leave other than her manager. Furthermore, the e-mail evidence presented by Plaintiff suggests that Defendant Corporation's position on the issue was that there would be "no exceptions." A subjective belief or unsubstantiated assertion is inadequate to satisfy Plaintiff's burden in order avoid summary judgment by showing pretext. *See Grimes*, 102 F.3d at 139–40.

Second, Defendant Corporation states that its decisions regarding the compensation of Greg Stephens is based on his experience as a Scheduler, his additional and more complex duties, and his participation on the 1998 special project. Plaintiff does not dispute that Greg Stephens had more experience as a Scheduler, that he participated in the 1998 special project, and could not state in her deposition testimony with any particularity the scope of Greg Stephens' additional duties. Furthermore, in this same deposition testimony, Plaintiff admits that a system change in Defendant Corporation's Atlanta office caused Greg Stephens to take on additional duties that resulted in a promotion. Employment discrimination laws were not

---

**18.** At this stage of the litigation, Defendant Corporation need not prove that it was actually motivated by the proffered reason. *See Contreras v. Suncast Corp.*, 237 F.3d 756, 760 (quoting *Burdine*, 450 U.S. at 257, 101 S.Ct. 1089).

intended to be vehicles for judicial second guessing of employment decisions, nor were they intended to transform the courts into personnel managers. *See Thornbrough v. Columbus & Greenville R. Co.*, 760 F.2d 633, 647 (5th Cir.1985). Disagreement by the Plaintiff regarding her qualifications relative to those of Greg Stephens is not sufficient to infer that Defendant Corporation's legitimate non-discriminatory reasons for his higher pay are false. *Molnar v. Ebasco Constructors, Inc.*, 986 F.2d 115, 119 (5th Cir.1993).

Finally, Defendant Corporation states that Plaintiff was terminated for falsification of sick leave documentation in October 1999, "the note," and for an unprofessional outburst in November 1999. Plaintiff was unable to provide more than a mere scintilla of evidence that unprofessional outbursts were tolerated at Defendant Corporation.[19] Plaintiff also does not dispute that she submitted the note in October 1999, and agrees that falsification of documents is a terminable offense.

Based upon the statements allegedly made by Plaintiff regarding her ability to obtain sick leave documentation and the similarity between the handwriting on the note to Plaintiff's handwriting to the untrained eye, the Court cannot conclude that Defendant Corporation was unreasonable or discriminatory in terminating Plaintiff. Furthermore, Defendant Corporation was under no duty to obtain a handwriting expert to validate the note, or even for that matter verify the note with Dr. Rhodes. Plaintiff's recently submitted evidence suggesting that Defendant Corporation might have been incorrect in its conclusion that Plaintiff authored the note does not save her from Summary Judgment because even an incorrect decision is not per se an unlawful discriminatory one. *See Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir.1991). Employment discrimination laws offer no relief from employment decisions that are erroneous or even arbitrary. *See Bienkowski v. Am. Airlines*, 851 F.2d 1503, 1508 (5th Cir. 1988).

Therefore, the Court finds that Defendant Corporation has provided legitimate, non-discriminatory reasons for its employment actions with respect to Plaintiff's sex discrimination claims under Title VII and Louisiana Employment Discrimination laws and Plaintiff has not carried her burden of showing that the legitimate non-discriminatory reasons were pretext.[20] Defendant's Motion for Summary Judgment is granted as to these claims.

## B. Retaliation Claims

### 1. Prima Facie Case of Retaliation

■■■ Plaintiff has alleged that her low 1998 evaluation with minimal pay increase, July 1999 failure to receive a pay increase, and November 1999 termination were unlawful retaliatory adverse employment actions under federal Title VII and Louisiana Employment Discrimination laws. Because Louisiana's Employment Discrimination statutes are analyzed under the same standards as Title VII, both Plaintiff's federal Title VII[21] and Louisiana

---

**19.** A mere scintilla of evidence is not sufficient to survive a motion for summary judgment. *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

**20.** Before the Charge was filed, Defendant Corporation replaced Plaintiff with Holly Lipscomb, a female. This fact suggests an absence of pretext as to Plaintiff's discrimina-

tory termination claim but is not conclusive. *See Bienkowski*, 851 F.2d at 1506 (discussing the effect of replacement by another worker within the protected class on the prima facie case of age discrimination).

**21.** 42 U.S.C. § 2000e–3(a) prohibits employers from discriminating against an employee "because he has opposed any practice made

state retaliation[22] claims will be considered jointly and referred to as Plaintiff's "retaliation claims."[23] In order to make out a *prima facie* case of retaliation, Plaintiff must prove that: (1) she was engaged in activity protected by Title VII; (2) Defendant Corporation took adverse employment action against her; and (3) a causal connection exists between that protected activity and the adverse employment action. *See Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 705 (5th Cir.1997).

Neither party disputes that Plaintiff's filing of complaints with Defendant Corporation's internal EEO office in December 1999 and January 1999 were protected activities. The salient issues are whether: a.) Plaintiff's 1998 low rating with minimal pay increase is time barred for the purposes of Title VII's 300–day requirement, b.) Plaintiff's low 1998 rating and the July 1999 failure to receive a pay increase were adverse employment actions, and c.) any allegedly retaliatory adverse employment action is causally connected to Plaintiff's protected activity.

 Because Plaintiff's 1998 low rating with minimal pay increase did not take place within the 300–day period prescribed by Title VII, she must show that a continuing violation took place in order to avoid

having this claim dismissed as untimely. *Berry*, 715 F.2d at 979. There is some evidence to show that the 1998 low rating with minimal pay increase was part of a series of related retaliatory acts. As part of the 1998 rating process, Defendant Corporation determined that it would revisit the pay decision in July 1999. In July of 1999, Defendant Corporation determined that Plaintiff was not eligible for a pay increase. Thus, it appears plausible that these two employment actions were related and nondiscrete, and given that both evaluation and pay decisions were made after[24] Plaintiff made an internal complaint of sex discrimination, it could be said that these acts were part of a series of retaliatory acts. Although this Court is not entirely persuaded that equitable considerations require that the filing period be tolled because Plaintiff's contemporaneous filing of internal complaints suggests that the facts supportive of the Title VII retaliation charge could have been apparent to a reasonable person, for summary judgment purposes, Plaintiff's retaliation claim with regard to the 1998 low evaluation with minimal pay increase will be viewed as timely.

 Timely or not, under current Fifth Circuit law,[25] the 1998 low evaluation and

---

an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

**22.** Plaintiff's action for redress under Louisiana state law is not under the Louisiana Employment Discrimination law, but under the "whistle blower" statute also located in Title 23 at § 23:967(A), (B). Neither party has addressed whether the actions complained of may be time barred under Louisiana's 1–year statute of limitations under La. Civ.Code art. 3492 or La.Rev.Stat. § 23:332(C.), and therefore this Court does not address the Louisiana limitations period in this ruling.

**23.** *See Nichols*, 138 F.3d at 566–67; *Deloach*, 897 F.2d at 818; *Devillier*, 709 So.2d at 280.

**24.** There is conflicting evidence with regard to date when the 1998 evaluation was finalized and to when Plaintiff first made contact with Defendant Corporation's internal Equal Employment Opportunity office. Without ruling on the credibility of the evidence, this Court will view the available evidence in Plaintiff's favor.

**25.** Plaintiff's Memorandum in Opposition to Defendant Corporation's Motion for Summary Judgment incorrectly states that the Fifth Circuit has limited the *Mattern* decision to its facts. The quoted decision is that of the

July 1999 failure to receive a pay raise are not adverse employment actions. The Fifth Circuit has analyzed the term "adverse employment action" in a stricter sense than other circuits, and has stated that Title VII was only designed to address "ultimate employment decisions." *See Burger v. Central Apt. Mgt., Inc.,* 168 F.3d 875, 878 (5th Cir.1999)(quoting *Mattern,* 104 F.3d at 705). Although the term ultimate employment decision has been interpreted to "include acts such as hiring, granting leave, discharging, promoting, and compensating," pay increases and evaluations have not been considered as ultimate employment decisions. *Mattern,* 104 F.3d at 707–08. Thus, only the November 1999 termination may be analyzed to determine whether it was causally connected to Plaintiff's protected activity in December 1998 and January 1999.

Defendant Corporation is correct that temporal proximity alone does not establish the requisite causal connection to establish a *prima facie* case of retaliation, and even then that temporal proximity must be very close. The United States Supreme Court has found that a temporal proximity of three to four months insufficient to establish a causal connection between protected activity and adverse employment action. *Clark Co. Sch. Dist. v. Breeden,* 532 U.S. 268, 272, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001). However, the Fifth Circuit has found causal connection when two months separated the protected activity and the adverse employment action and there was evidence that the employer's proffered reason for the adverse employment action was pretextual. *See Mota v. Univ. Tex. Houston Health Sci. Ctr.,* 261 F.3d 512, 521–22 (5th Cir.2001). Therefore, it seems unlikely that Plaintiff

could establish a *prima facie* retaliation case by merely alleging a November 1999 termination resulted from protected activity occurring in December 1998 and January 1999. In light of *Mota*'s holding, and in an abundance of caution, this Court will rule on Defendant Corporation's Motion for Summary Judgment for Plaintiff's failure to establish a *prima facie* case of retaliation in conjunction with its ruling on whether Defendant Corporation's legitimate non-discriminatory reason for its adverse employment action was merely pretextual below.

*2. Legitimate Non-discriminatory Reasons*

■■■ Defendant Corporation's legitimate, non-discriminatory reason for the November 1999 termination is that Plaintiff was terminated for falsification of sick leave documentation in October 1999, "the note," and for an unprofessional outburst in November 1999. As discussed previously in section III.A.3. with respect to Plaintiff's sex discrimination claims, Plaintiff has failed to establish evidence suggesting that Defendant Corporation's motive for terminating her was pretextual. Thus, Defendant Corporation's Motion for Summary Judgment with regard to Plaintiff's retaliation claims is granted.

**C. Equal Pay Act Claim**

*1. Prima Facie Equal Pay Act Case*

■■■■ In order to establish a claim under the Equal Pay Act ("EPA"), Plaintiff must provide evidence that: a.) higher wages were paid to a male employee; b.) for equal work requiring substantially similar skill, effort, and responsibilities; and c.) the work was performed under similar

---

United States District Court for the Northern District of Texas. Furthermore, that court admits that the *Mattern* holding still remains

the law of the Fifth Circuit. *See Shafer v. Dallas County Hosp. Dist.,* 1997 WL 667933 *5 (N.D.Tex.1997).

working conditions. *See Corning Glass Works v. Brennan,* 417 U.S. 188, 195, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974). As discussed previously in section III.A.3. with regard to Plaintiff's sex discrimination claim alleging disparate treatment with respect to Greg Stephens' pay, Plaintiff's own testimony evidences that she cannot establish a *prima facie* case under the EPA. She does not dispute that Greg Stephens has more experience as a Scheduler and additional duties, as well as participation in a special project. Plaintiff makes no legal arguments regarding the equality of work nor does she offer more than conclusory allegations regarding her own qualifications.[26] By providing this Court no reason to infer that Defendant Corporation's legitimate reason for the pay disparity is false, Plaintiff does not make out a *prima facie* employment discrimination case. Therefore, Defendant Corporation's Motion for Summary Judgment on this issue is granted.

Accordingly, the motion by Defendant Corporation for summary judgment (doc. 25) is hereby granted as described herein. Any issues lurking in the parties' submissions that were not briefed to the Court and not specifically addressed by this opinion are hereby dismissed without prejudice. No further claims arising from this case remain before this Court.

United States District Court.
N.D. Illinois, Eastern Division.

---

26. "[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate" to withstand a motion for Summary Judgment. *See Grimes,* 102 F.3d at 139–40. In fact, even if Plaintiff had produced some concrete evidence regarding her qualifications versus those of Greg Stephens, "unless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *See Deines v. Tex. Dep't of Protective and Regulatory Servs.,* 164 F.3d 277, 280 (5th Cir.1999) (quoting *Scott v. Univ. of Miss.,* 148 F.3d 493, 508 (5th Cir.1998)).